**CONTINENTAL CASUALTY COMPANY,**
Plaintiff Below, Appellant,

v.

**ALEXIS I. duPONT SCHOOL DISTRICT**
et al., Defendants Below, Appellees.

Supreme Court of Delaware.

March 4, 1974.

Roger P. Sanders, Prickett, Ward, Burt & Sanders, Wilmington, for plaintiff below, appellant.

Allen M. Terrell, Jr., Richards, Layton & Finger, Wilmington, for defendants below, appellees.

CAREY and DUFFY, JJ., and BROWN, Vice-Chancellor, sitting.

CAREY, Justice:

Continental Casualty Company (hereinafter CNA), plaintiff below in this declaratory judgment action, seeks reversal of the Superior Court's determination that CNA was obliged to defend an action brought against its insured, Alexis I. DuPont School District (hereinafter The School District).

The action against appellant's insured was instituted in the United States District Court in Wilmington. The plaintiff in that action was Frederic H. Boyce, an employee of The School District, who sought relief for what he contended was The School District's wrongful decision not to re-employ him for the 1971–72 school year. The School District notified CNA of Boyce's suit and requested that CNA defend the action under the terms of its comprehensive commercial casualty insurance policy. CNA disclaimed liability on the ground that the policy did not provide coverage for this claim. The suit proceeded in the District Court, and The School District prevailed. This declaratory judgment action ensued, CNA seeking clarification of its duty to defend. The Superior Court granted The School District's motion for summary judgment, holding that CNA was obligated to pay its insured $12,998.40, the cost of defending the action begun by Boyce. We disagree with this conclusion.

Whether CNA was obligated to defend the action against The School District depends, of course, upon the terms of its policy. The pertinent part of the policy provides:

"1. COVERAGE P—PERSONAL INJURY LIABILITY

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called 'personal injury') sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

"Group A—false arrest, detention or imprisonment, or malicious prosecution;

"Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured;

"Group C—wrongful entry or eviction, or other invasion of the right of private occupancy;

"if such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

■ Generally, an insurer's duty to defend is limited to suits which assert claims for which it has assumed liability under the policy. 44 Am.Jur.2d, Insurance, § 1535; 7A Appleman, Insurance Law and Practice, § 4684 (1962); 14 Couch on Insurance, § 51:143 (2d Ed. 1965). In determining whether the third party's action against the insured states a claim covered by the policy, we must look to the allegations of the complaint. 44 Am.Jur.2d, Insurance, § 1539; Appleman, *supra,* § 4683; Couch, *supra,* § 51:143. The test is whether the complaint alleges a risk within the coverage of the policy. Stating that test in the language of the policy, the question becomes: "does the complaint allege any personal injury arising out of the offense of publication or utterance of a libel or slander or of other defamatory or disparaging material?"

The pertinent parts of the complaint filed by Boyce, set forth below,* allege: (1) violation of his right to substantive due process; (2) breach of contract; (3)

*The body of the complaint reads in part as follows:

"                    COUNT ONE

"1. Jurisdiction over the captioned action is conferred on this court by 28 U.S.C. Sec. 1343(3), (4) and 42 U.S.C. Sec. 1983. Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. Sec. 2201, injunctive relief and damages.

*     *     *     *     *

"4. Plaintiff was hired by defendants to teach in a special, federally funded program called the World of Work Program. He has been and is presently the only instructor in this program teaching at Alexis I. duPont High School.

*     *     *     *     *

"5. When he was hired, plaintiff was assured by defendants' agent that in the event the World of Work Program was not refunded or was discontinued at the end of the first year, 1970–71, he would be re-employed anyway. He is certified as a teacher of the socially and emotionally maladjusted at both the high school and elementary school levels, grades 1 through 12, and as a teacher of normal elementary school children, grades 1 through 6.

"6. Plaintiff has performed his duties satisfactorily.

"7. On March 17, 1971, plaintiff received a letter from defendant Walker, on behalf of the Board of Education, advising him that the Board intended to terminate his services at the end of the current year, and stating as the reason for the termination 'the elimination of the course which you have been teaching.'

"8. On information and belief, the course plaintiff is teaching is not being eliminated and, in fact, the World of Work Program has been re-funded for another year, and plaintiff's job has been offered to another teacher in the district.

"9. Plaintiff, upon receiving the said notice of intention to terminate, wrote to defendants on March 23, 1971, and requested a hearing. This was refused by letter dated March 26, 1971.

"10. On May 10, 1971, plaintiff's counsel communicated in writing with defendants' counsel, explained plaintiff's contentions, and requested a hearing or opportunity to meet with the district management to discuss the situation. This request was refused by letter dated May 20, 1971.

"11. Defendants' stated reason for nonrenewal of plaintiff's contract is wholly without basis in fact and wholly arbitrary and unreasoned, in violation of plaintiff's federally guaranteed right to substantive due process, and is in breach of defendants' agreement to re-employ plaintiff even if the World of Work Program was not re-funded or was discontinued.

"12. Defendants arbitrarily refused to afford plaintiff an opportunity to be heard in opposition to the stated reason for refusal to renew his contract, in violation of plaintiff's federally guaranteed right to procedural due process.

"13. As a result of the foregoing acts of defendants, plaintiff has suffered damages.

"                    COUNT TWO

"14. Plaintiff re-alleges paragraphs 1 through 6 inclusive.

"15. In March, 1971, plaintiff criticized certain aspects of the World of Work Program in an oral discussion with an acquaintance who was an employee of the State Department of Public Instruction and in a letter written in response to an inquiry by the President of the Council for Exceptional Children. The letter was published without plaintiff's knowledge or permission in a newsletter of the said Council for Exceptional Children.

"16. Plaintiff re-alleges paragraphs 7 through 10 inclusive.

"17. Defendants' decision to refuse to renew plaintiff's contract was in retaliation for plaintiff's aforesaid criticism of the World of Work Program. The reason stated by defendants for refusing to renew plaintiff's contract was a mere pretext, and was not based on fact.

"18. Defendants' refusal to renew plaintiff's contract for the aforesaid reason violated plaintiff's right to freedom of speech, guaranteed to him by the First and Fourteenth Amendments to the U. S. Constitution.

"19. As a result of the foregoing acts of defendants, plaintiff has suffered damages.

"WHEREFORE, Plaintiff prays as follows:

"1. That defendants be ordered to tender to plaintiff a contract for the school year 1971–72 at an appropriate salary and with corresponding benefits;

"2. that any criticism of plaintiff as a result of his exercise of freedom of speech and protection of his due process rights be expunged from the school records;

"3. that defendants compensate plaintiff for any damages sustained by him as a result of defendants' breach of contract and violation of plaintiff's civil rights, including attorneys' fees and expenses, damage to his professional reputation, damage to his earning capacity, mental anguish and emotional stress, and costs of relocating in another area, if such be necessary;

"4. that plaintiff be awarded exemplary damages for deprivation of his civil rights;

"5. that plaintiff be awarded such other and further relief as the Court deems appropriate."

violation of his right to procedural due process; and (4) violation of his right of free speech. The *ad damnum* clause prays for damages sustained "as a result of defendants' breach of contract and violation of plaintiff's civil rights, including . . . damage to his professional reputation . . ." It is these words—"damage to his professional reputation"—upon which The School District relies for its contention that the complaint states a claim, or a potential claim, covered by Group B of the Personal Injury Liability provision.

■ For present purposes, we accept the following principles usually employed in considering whether an insurer is bound to defend an action against its insured:

(a) where there exists some doubt as to whether the complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insured;

(b) any ambiguity in the pleadings should be resolved against the carrier;

(c) if even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises.

■ Nevertheless, we find that CNA was not bound to defend the action against The School District. Boyce's complaint does not allege a publication, or an utterance, or libel, or slander, or defamation; in short, it does not allude to any defamatory or disparaging material, but appears to charge only a breach of contract, denial of due process, and violation of his right of freedom of speech. We do not suggest that the plaintiff necessarily must have couched his claim in the technical verbiage peculiar to an action for defamation in order to bring it within the purview of the policy, but we are convinced that his complaint, read as a whole, does not charge any offense insured against under the terms of the policy. It follows that CNA was not obligated to defend The School District in the action brought by Boyce.

■ We comment briefly upon an argument raised by appellees. They contend, quite correctly, that the parties' intent is an important factor to be considered in construing an insurance policy. The policy here contained several printed exclusions, among them, "Exclusion C," which provided that the insurance policy did not apply "to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the named insured." Exclusion C, however, was deleted from this policy. The record is not clear, but we shall assume that The School District paid an additional premium charge to secure the deletion of this exclusion from the policy, as appellees contend. Appellees argue that this act indicates an intention of the parties which has some bearing on the question now before us; they contend that "The School District wished to obtain the broadest possible coverage as to liability for personal injuries alleged against it in its employment activities. When Exclusion C was deleted from the policy, The School District had no knowledge of any limitations in its coverage of liability for defamation arising in an employment context." We disagree with appellees' position that the parties' intent with respect to Exclusion C is germane to the issue before this Court. It seems clear to us that the deletion of Exclusion C is not in any way material to the issue we have discussed above. It was a "quantitative" change in the coverage of the policy; it does not effect any "qualitative" change. In other words, it does not expose the insurer to any kind of risk not described in the Coverage P—Personal Injury Liability provision of its contract.

The decision below must be reversed.