ALLSTATE AUTO LEASING COMPA-
NY, a corporation of the State of
Delaware, Plaintiff,

v.

Charles H. CALDWELL, Iva A. Martin,
the Hartford Insurance Company, a cor-
poration of the State of Connecticut, F.
H. Simonton, Inc., a corporation of the
State of Delaware, Gateway Insurance
Company, was a corporation of the State
of Delaware, Robert Watson, Jr., trad-
ing as R. L. Watson Insurance Agency,
and Allstate Insurance Company, a cor-
poration of the State of Illinois, Defend-
ants.

Superior Court of Delaware,
New Castle County.

Submitted Sept. 22, 1978.

Decided Sept. 27, 1978.

Michael N. Castle, of Schnee & Castle, Wilmington, for plaintiff.

B. Wilson Redfearn, of Tybout & Redfearn, Wilmington, for defendant Gateway Ins. Co.

Dennis D. Ferri, of Becker & Ferri, Wilmington, for defendant Allstate Ins. Co.

Alfred M. Isaacs, of Flanzer & Isaacs, Wilmington, for defendant Hartford Ins. Co.

Robert K. Beste, and Mary Pat Trostle, of Biggs & Battaglia, Wilmington, for defendant Iva A. Martin.

Paul H. Spiller, of Kimmel & Spiller, Wilmington, for defendant F. H. Simonton, Inc.

George E. Evans, Wilmington, for defendant Robert Watson, Jr., trading as R. L. Watson Ins. Agency.

## OPINION

TAYLOR, Judge.

Plaintiff Allstate Leasing Company [Leasing] seeks declaratory judgment holding one or more of several insurance carri-

ers liable for any damages which may be recovered against Leasing as a result of an automobile accident which is the subject of *Iva A. Martin v. Mattie Kebler,* C.A. 1161, 1974. Leasing is in the business of leasing automobiles and leased the automobile which was involved in the accident. The automobile involved in the collision had been leased by Charles H. Caldwell [Caldwell] from Leasing. Under the auto lease, Caldwell had a duty to provide liability insurance. Caldwell had liability coverage of other automobiles with Gateway Insurance Co. [Gateway] which he had procured through defendant R. L. Watson Insurance Agency [Watson]. At Caldwell's request, on July 3, 1973 Watson undertook to provide insurance coverage for this leased car from Gateway.[1]

### I

Gateway has moved for summary judgment on the basis that the Gateway insurance was not effective until July 10, 1973 when Gateway received the written application, four days after the accident, and that Watson had no authority to bind Gateway to insurance coverage prior to Gateway's receipt of the insurance application on July 10, 1973. Simply, Gateway's position is that Watson was not and could not have been the agent of Gateway.

■ Gateway relies on the definition of "agent" as found in 18 Del.C. § 1702 and the contrasting definition of "broker" as found in 18 Del.C. § 1704. In essence under the definitions, an agent is one who has been appointed by an insurer to solicit applications or negotiate contracts on behalf of the insurer, while a broker is one who is not an agent of an insurer who acts on behalf of an insured and solicits, negotiates or procures insurance. Under the statute, in order to constitute an agent, an insurer must file with the Insurance Commissioner an appointment document designating one as its agent. 18 Del.C. § 1724. Separate licenses are provided for agents and brokers. 18 Del.C. § 1713.

It is not contended that an agency appointment had been filed by Gateway designating Watson as Gateway's agent.

It is recognized that the objective of the statute is to draw a clear line separating into two groups those who are in the business of dealing with the public in supplying the insurance needs of the public. Thus, according to the statute one who provides such service must fall either into the category of agent for the insurer or into the category of agent for the insured member of the public. The Insurance Commissioner is given powers to administer these provisions. Sanctions are provided for those who do not observe them. Here, however, the insurer is seeking to have those provisions strictly applied in order to gain a benefit for itself to the detriment of a member of the public.

■ It has been said that whether an insurance broker represents the insurer or the insured is a question which cannot be answered absolutely, but depends upon the circumstances of the particular case. Under certain circumstances and for certain purposes, an insurance broker may represent either the insured or the insurer, or both. The question is one of fact to be determined from the evidence. 43 *Am. Jur.2d* Insurance § 149, p. 203.

"It is well recognized that under certain circumstances and for certain purposes an insurance broker may be the agent of both the insurer and the insured." 43 *Am.Jur.2d* Insurance § 150, p. 205. Similar statements are to be found in 3 *Couch on Insurance 2d* §§ 25:92–25:95, pp. 402–411.

■ An agency relationship may exist by virtue of a course of dealing. 3 *Couch on Insurance 2d* § 26:26, p. 483–5. The course of dealing must, of course, have been participated in or acquiesced in by the insurer. Ibid.

■ It is recognized in this State that an insurer may not do business while it is in

1. It has been stated that Gateway has now become insolvent and that Insurance Guaranty Association has replaced Gateway. However, Gateway has continued to be treated as a moving party and it will be so treated in this opinion.

violation of statutory regulations controlling the conduct of its business activities and hence it may not enforce a business transaction which has been in violation of those regulations. *Beeber v. Walton*, Del. Super., 32 A. 777 (1887); *Taggart v. George B. Booker*, Del.Super., 35 A.2d 499 (1943). *Beeber* was cited with approval by the Supreme Court in *Model Heating Co. v. Magarity*, Del.Supr., 81 A. 394 (1911). However, in this case, assuming without deciding that a violation of the statute has occurred, it is the insurer who participated in such alleged violation which seeks to have the benefit of its own violation by preventing a member of the public from having the benefit of the transaction.

█ Nothing in the cited statute deals with the consequences to the contracting public from the failure of a broker and an insurer to adhere to the restrictive demarcations of §§ 1702 and 1704. It is, therefore, necessary to examine the objectives of the statute. *E. A. Strout Co. v. Howell*, Del.Supr., 85 A. 666 (1913). Clearly, one of the prime objectives as well as justification for the stringent regulation of the insurance industry is protection of the public. *Beeber v. Walton*, supra.

█ 3 *Couch on Insurance 2d* § 26:13, p. 458 indicates that some jurisdictions have held that failure to comply with an insurance statute renders the transaction void and unenforceable, while other jurisdictions have held that the validity of the transaction is not affected and the transaction may be enforced by the insured. An examination of the cases cited in support of the former proposition shows that, in general, those cases involved the effort of the insurer to benefit from the transaction. Hence, I do not find authoritative basis to permit the insurer to assert its own violation as a barrier to recovery by an insured member of the public. A wrongdoer cannot avoid the ordinary consequences of its action merely because its action violated a statute which forbade it to take such action. If an agency relationship existed between Gateway and Watson, when tested by the general law, I find no valid basis for extending

definitions of §§ 1702 and 1704 which are intended for the regulation and licensing of segments of the insurance industry to permit Gateway, if it has violated the regulations, to escape liability for its transaction. Accordingly, plaintiff is not precluded by §§ 1702 and 1704 from showing that the person with whom plaintiff dealt was acting as agent of an insurer during the transaction. Whether the insurer had by its actions created an agency relationship must be determined for purposes of this litigation by testing the facts according to the legal principles applicable to agency and not limited by the definitions in §§ 1702 and 1704.

Plaintiff Leasing also points out that in this instance Caldwell had existing liability coverage issued by Gateway covering a different vehicle and the transaction in question here merely involved the extension of the existing coverage to this vehicle. It has been held in some cases that limitations in the law of insurance agency are less stringent in such a case than where no pre-existing insurance arrangement existed. 43 *Am. Jur.2d* Insurance § 149, p. 205.

Gateway cites two cases in support of its motion—*Bradford, Inc. v. Travelers Indemnity Company*, Del.Super., 301 A.2d 519 (1972); and *Ottendorfer v. Aetna Life Insurance Co.*, Del.Super., 231 A.2d 263 (1967).

*Bradford* involved the sufficiency of notice of an accident. Notice was given to the insurance broker within a day or two after the accident. This Court stated that "absent any evidence of authority except possibly to forward the policy to the insured and to accept premiums from him, the broker is the agent of the insured". In *Bradford*, the Court found no such indicia.

*Ottendorfer* involved the power of an agent to vary the express terms of the insurance policy, and is inapplicable.

Plaintiff has raised certain issues including fraud and coverage under a pre-existing insurance policy issued by Gateway. Plaintiff has not discussed the facts upon which it claims fraud. Nor has plaintiff set forth any policy provision upon which it relies for its contention that other Gateway insurance

was applicable here. In view of the decision reached above, no further discussion of these matters is called for.

■■■ Since this is a motion for summary judgment, Gateway must show that no issue of material fact exists. It can prevail only if the facts and reasonable inferences are viewed most favorably to Gateway's adversaries. *Schorah v. Carey*, Del.Supr., 331 A.2d 383 (1975); *Collins v. F. W. Woolworth Co.*, Del.Supr., 295 A.2d 732 (1972); *Ebersole v. Lcwengrub*, Del.Supr., 180 A.2d 467 (1962); *Murphy v. T. B. O'Toole, Inc.*, Del.Super., 87 A.2d 637 (1952); *Phillips v. Delaware Power and Light Co.*, Del.Supr., 216 A.2d 281 (1966); *Behringer v. William Gretz Brewing Co.*, Del.Super., 169 A.2d 249 (1961); *Woodcock v. Udell*, Del.Super., 97 A.2d 878 (1953). On the agency question, I do not find that that test has been met.

## II

■■■ Defendant Allstate Insurance Company [Allstate Insurance] provided liability coverage for Leasing. Allstate Insurance has moved for summary judgment on the ground that since the Caldwell lease ran for one year and the Allstate Insurance policy only covered cars leased for less than 12 months, the Allstate Insurance lease did not cover the car rented to Caldwell.

The risk coverage of the policy appears to extend to bodily injury liability, property damage liability, "uninsured motorist" protection and "deductible comprehensive" protection. It has not been argued that the damages claimed here do not fall within the risk coverage of the policy.

The Allstate Insurance policy is less than distinct as to the vehicular coverage. On the cover sheet of the policy opposite the printed words "Description of the Vehicle" are the typewritten words "Daily Rental See Endorsement No. 1". Endorsement No. 1 contains the following:

"This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, Property Damage Liability, Collision or Upset, (R) $100 Deductible Comprehensive applied with respect to each Driverless Car as an automobile described in the policy, subject to the following provisions:"

It is contended by Allstate Insurance that this language, coupled with the definition which follows the above quotation, delineates the coverage of the policy. This position is not opposed and it will be accepted that the policy only provides coverage of "driverless cars."

"Driverless Car" is defined in Endorsement No. 1 as "an automobile while rented by the named insured to the customer for a period of time less than twelve (12) consecutive months or while being held for such rental." The parties point to no other language of the policy which has a bearing on this definition. The test of insurance coverage here turns on the period for which the customer had rented the automobile. I do not find that the rental period remaining at the time of the accident has a bearing on the coverage.

By its terms, the Allstate Insurance coverage is limited to automobiles rented by Allstate for "less than twelve (12) consecutive months." The Leasing lease with Caldwell was for a term of one year and to continue thereafter until terminated by either party upon 30 days' notice and it appears that the vehicle involved in the accident was leased under those terms for a specified period of 36 months. According to the general lease, the lease term specified could be extended beyond one year, but there was no option to shorten the period to less than one year.

A year is generally defined as consisting of twelve months or 365 days. 46 *Words and Phrases*, p. 527–8. The months or days are those which are consecutive. In general in applying a time test, the period begins with the particular date of one time designation and continues to the same date of the next time designation. The time designation may be a year, a month or a week. Thus, in computing time, a month would run from a date in one month to the corre-

sponding date of the next month. 6 *Words and Phrases*, p. 15–16; 27A *Words and Phrases*, pp. 123–8.[2] I do not find a basis here to conclude that the language was intended to refer to "months" as beginning on the first day of the month, nor has any evidentiary material been proffered which indicates that intention. Applying the definition of "driverless car" as found in Endorsement No. 1, the car leased to Caldwell was not covered by the Allstate Insurance policy.

Leasing contends that to apply the policy definition in such way as to exclude the Caldwell leased car would work an injustice and do violence to the principle that insurance policies should be liberally construed in favor of the insured, citing *Laird v. Employers Liability Assur. Corp. Ltd. of London, England*, Del.Super., 18 A.2d 861, 2 Terry 216 (1961); *Brooks Transp. Co. v. Merchants Mut. Cas. Co.*, Del.Super., 171 A.2d 207, 6 W.W.Harr. 40 (1934); and *Novellino v. Life Ins. Co. of North America*, Del.Supr., 216 A.2d 420 (1966). In contrast to the cases cited, the wording used in the definition in the Allstate Insurance policy is not susceptible of more than one meaning. In such case, there is no latitude within which to apply the rule of liberality. *Apotas v. Allstate Ins. Co.*, Del.Supr., 246 A.2d 923 (1968); *Novellino v. Life Insurance Co. of North America*, supra.

Allstate does not assert that there was an arrangement with Allstate Insurance for it to provide insurance coverage for all cars leased by Leasing or to provide coverage co-extensive with Leasing's car leases, nor has it been shown that Allstate Insurance collected a premium for insurance coverage for this car.

Leasing and defendant Hartford Insurance Company [Hartford] contend that a question of fact exists as to whether the car which was rented to Caldwell was a "driverless car" under the Allstate Insurance policy. However, they point to no dispute except as to the meaning of the policy definition. The duration of the Caldwell lease is set forth in the written lease and the definition which focuses upon the duration of the car rental is set forth in the written insurance policy. No factual dispute appears as to either document. A legal dispute exists and the Court has dealt with that dispute above.

Under the facts presented, summary judgment must be granted in favor of Allstate Insurance with respect to the claim of Leasing.

### III

In summary, the motion of defendant Gateway Insurance Company for summary judgment is denied and the motion of Allstate Insurance Company for summary judgment is granted. IT IS SO ORDERED.

---

2. In Delaware, unless a contrary result appears to have been intended, the first day is excluded but the last day is included. *Santow v. Ullman*, Del.Supr., 166 A.2d 135 (1960).