**TERRA NOVA INSURANCE COMPANY, LTD., Plaintiff,**

v.

**NANTICOKE PINES, LTD. and Kevin L. Gibbs, Defendants.**

**Civ. A. 89–75–CMW.**

United States District Court, D. Delaware.

Aug. 29, 1990.

Mason E. Turner, Jr. of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del. (Jonathan Dryer, and Margaret Sherry Lurio of Wilson, Elser, Moskowitz, Edelman & Dicker, Philadelphia, Pa., of counsel), for plaintiff.

Nanticoke Pines, Ltd., pro se.

A. Richard Barros, and Bradley S. Eaby of Barros, McNamara & Scanlon, Dover, Del., for Gibbs.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiff Terra Nova Insurance Co. filed this declaratory judgment action against defendants Nanticoke Pines and Kevin L. Gibbs on February 22, 1989. Plaintiff seeks a declaration that it has no obligation to defend or indemnify defendant Nanticoke for any claims asserted against Nanticoke by defendant Gibbs in a pending state lawsuit. Plaintiff has now moved for summary judgment. The court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).[1]

## PRELIMINARY DISCUSSION

Defendant Gibbs commenced a lawsuit in 1987 in Delaware Superior Court against Nanticoke and other parties. In that action, Gibbs contends that Nanticoke is liable for injuries sustained by Gibbs in March, 1985 outside of a tavern operated by Nanticoke. Gibbs alleges that he sustained his injuries when John L. Hargett, an individual allegedly employed by Nanticoke as a security officer, shot him. Hargett was prosecuted by the State of Delaware for the shooting and has pled guilty to first degree assault.

Gibbs alleges in the Superior Court action that Nanticoke is liable in two respects. First, he asserts that Nanticoke is liable for Hargett's actions on the basis of respondeat superior. Second, Gibbs contends that Nanticoke is liable for the incident based on its own negligence or recklessness. For example, Gibbs asserts that Nanticoke is at fault for hiring Hargett; failing to supervise Hargett; failing to provide adequate security for patrons; permitting alcohol to be served to Hargett; and failing to prevent or stop the altercation from occurring.

Plaintiff Terra Nova is currently defending Nanticoke in the Superior Court action. Nanticoke had purchased a liability insurance policy in the amount of $500,000 combined single limits from Terra Nova in 1984. Nanticoke had purchased the insurance by contacting the Insurance Market, an insurance broker, which in turn obtained the insurance through Tri–State General Insurance Agency. The term of the policy was from December 8, 1984 to December 8, 1985, covering the time when the assault occurred.

Terra Nova now seeks summary judgment in the present action because it contends that two provisions of the policy exclude coverage for the incident. Defendants contend, however, that Nanticoke never received the policy and that Nanti-

---

1. Plaintiff is a citizen of a foreign state and defendants are both citizens of Delaware.

coke is thus not bound by the exclusions therein. Further, defendants contend that the provisions do not in fact exclude coverage for the incident in question.

For the reasons discussed below, the court hereby grants summary judgment.

## DISCUSSION

Fed.R.Civ.P. 56(c) provides that a party is entitled to summary judgment if there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. The party moving for summary judgment has the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). However, a party opposing summary judgment may not respond by resting on the mere allegations of its pleadings; rather, it must, by affidavits or otherwise, set forth specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In ruling on a summary judgment motion, a court must view all facts, and any reasonable inference from those facts, in the light most favorable to the nonmoving party. *Wilmington Housing Authority v. Pan Builders, Inc.*, 665 F.Supp. 351, 353 (D.Del.1987).

As stated previously, plaintiff contends that summary judgment is appropriate because two provisions of the insurance policy clearly bar coverage for the incident. Defendants assert, however, that the exclusions are not part of the policy because Nanticoke never received the policy or the exclusions prior to the incident.

 The court finds that the delivery or non-delivery of the policy and exclusions is irrelevant to the policy's validity and enforceability. Under Delaware law,[2] delivery of an insurance policy is not required in order to have a binding contract of insurance. *J.A. Montgomery, Inc. v. Marks Mobile Homes, Inc.*, 254 A.2d 853, 855 (Del.Super.1969)[3]; *see also* 1 G. Couch, *Cyclopedia of Insurance Law* § 10:4, at 683 (2d ed. 1984) (delivery of an insurance policy is necessary only when it is expressly required as a condition of the consummation of the contract). Further, even if delivery were required, the court finds that Nanticoke constructively received the policy when the Insurance Market received it. The Insurance Market was clearly an insurance broker, and thus served as Nanticoke's agent. The Delaware insurance code defines an insurance broker as an entity that negotiates insurance contracts for a party other than itself with an insurer that has not appointed the entity as its

**2.** The court must apply the choice of law rules applied in Delaware state courts. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). In a contract action, the Delaware Supreme Court applied the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws § 188. *Oliver B. Cannon and Son, Inc. v. Dorr–Oliver, Inc.*, 394 A.2d 1160, 1166 (Del.1978). That test provides that a court apply the law of the state which has the most significant relationship to the transaction and the parties. Restatement (Second) of Conflict of Laws § 188(1) (1971). The factors to consider include the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.* at § 188(2). In this case, the insured (Nanticoke) is a Delaware corporation; the insurance was placed for Nanticoke by an insurance broker located in Delaware; and the insured premises are located in Delaware. Since it appears that Delaware has the most significant relationship to the transac-

tion and the parties, the court will apply Delaware law.

**3.** *Montgomery* does state that non-delivery of an insurance contract can raise an inference that the insurance was never procured. *J.A. Montgomery, Inc.*, 254 A.2d at 855. However, the facts of that case differ from the facts in the case at bar. Plaintiff in that case was an insurance company that sought to recover premiums paid by it on insurance ordered by defendant. *Id.* at 854. Defendant sought to avoid liability completely by asserting that plaintiff had never procured the coverage defendant had ordered. *Id.* at 855. In the case at bar, neither side is denying that an insurance contract existed. Rather, defendants are arguing that the writing presented by plaintiff is an invalid representation of the contract because it was never delivered. Further, there is ample evidence that some policy did exist, including a copy of a policy; an invoice from Tri–State General to the Insurance Market for the premium; and a check from the Insurance Market to Tri–State for the premium.

agent. Del.Code Ann. tit. 18, § 1703 (1989). The code further provides that an insurance broker shall be regarded, in any controversy between the insured and the insurer, as representing the insured and not the insurer, except for purposes of premium receipt. *Id.*[4] The policy was therefore delivered to Nanticoke when it was delivered to the Insurance Market.[5,6] Finally, even if the policy were invalid based on nondelivery, the court disagrees with defendants that an insurance contract between Nanticoke and Terra Nova would otherwise exist. Defendants essentially argue that, in the absence of the written policy presented by Terra Nova, there exists an oral contract of insurance based on the terms agreed upon between Nanticoke and the Insurance Market and based on Nanticoke's reasonable expectations. Oral contracts of insurance may be valid. *Brandywine Shoppe, Inc. v. State Farm Fire & Casualty Co.*, 307 A.2d 806, 808 (Del.Super.1973). However, defendants have presented no evidence of any conversations between representatives of Nanticoke and Terra Nova that could have formed such a contract. Further, Nanticoke and the Insurance Market could not have formed an oral contract, as the Insurance Market was Nanticoke's agent, not

---

**4.** Despite the clear statutory language, the Delaware Superior Court has said that whether an insurance broker represents the insurer or the insured is a question which cannot be answered absolutely, but depends upon the *circumstances* of the particular case. *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 750 (Del.Super.1978). Under certain circumstances and for certain purposes, an insurance broker may represent either the insured or the insurer, or both. *Id.* The court finds that the facts of this case establish that the Insurance Market was the agent of Nanticoke. Nanticoke contacted the Insurance Market and asked the Insurance Market to secure coverage. Appendix to Plaintiff's Motion for Summary Judgment at A–75 (Deposition of Stephen Michael Hartstein at 8). The Insurance Market was free to obtain coverage from any insurance company it chose. *Id.* The Insurance Market did not even deal directly with Terra Nova, but rather dealt with Tri–State, which actually secured the coverage from Terra Nova. *Id.* at A–91 (Hartstein Deposition at 24). The Insurance Market has no ties to Terra Nova, and has no authority to bind coverage for Terra Nova. *Id.* at A–76, A–77 (Hartstein Deposition at 9, 10). The Insurance Market was clearly acting as Nanticoke's agent in the transaction. *See also Terra Nova Ins. Co. v. Thee Kandy Store, Inc.*, 679 F.Supp. 476, 478 (E.D.Pa. 1988) (when a broker is allowed to choose which company shall become the insurer, the broker is the agent of the insured; insured constructively received policy when broker received policy from wholesaler; wholesaler (Tri–State) is a more likely candidate for an agency relationship with the insurer than broker is); *Mount Vernon Fire Ins. Co. v. Pied Piper Kiddie Rides, Inc.*, 445 A.2d 949, 954 (Del.Super.1982) (actions of broker are not imputable to the insurance company); *National Fire Ins. Co. v. Eastern Shore Laboratories, Inc.*, 301 A.2d 526, 529–30 (Del.Super.1973) (insurance broker not agent of insurance companies); *but see* 3 G. Couch, *Cyclopedia of Insurance Law* § 25:95, at 454 (2d ed. 1984) (it is the general rule that an insurance broker acts for the insurer for the purpose of collecting and remitting the premium and delivering the policy).

**5.** Defendants raise a question as to whether the Insurance Market did in fact receive a copy of the policy prior to the shooting. The Insurance Market does not currently have a copy of the policy because the agency retains policies for only three years. Appendix to Plaintiff's Motion at A–73 (Hartstein Deposition at 6). However, the only reasonable inference that can be drawn from the facts presented is that the Insurance Market received the policy prior to the incident. Mr. Hartstein of the Insurance Market stated at his deposition that he believes he had received a copy of the policy and endorsements prior to the shooting. *Id.* at A–82–83 (Hartstein Deposition at 15–16). Although Mr. Hartstein could not be absolutely certain he received the policy, he indicated that, based on his business procedures, it was highly likely that he had received it. *See id.* at A–82, A–99 (Hartstein Deposition at 15, 32). Further, Tri–State's business procedure at the time the policy was issued was to forward a copy of the policy and all endorsements, as well as an invoice, to the entity requesting coverage. *Id.* at A–67 (Affidavit of Eileen P. Dickerson at 2). Records show that the Insurance Market paid Tri–State the policy premium in January, 1985. *Id.* at A–149. Finally, Nanticoke's answers to interrogatories indicate that the Insurance Market sent the first three pages of the policy to Nanticoke after the shooting. Appendix to Defendant Kevin Gibbs' Answering Brief at A–363. This clearly implies that the Insurance Market had the policy prior to the shooting.

**6.** To the extent that Nanticoke might argue that the exclusions do not apply because it was unaware of them, such a contention must be rejected. An insured has a duty to read its insurance policy and it is bound by the provisions thereof if they are clear and unequivocal. *Hallowell v. State Farm Mutual Auto. Ins. Co.*, 443 A.2d 925, 928 (Del.1982).

Terra Nova's agent.[7]

Since the policy is valid, the court will now turn to the basis for Terra Nova's motion. Terra Nova contends that it has no duty to defend Nanticoke in the state court suit because of two exclusions in the policy. The first exclusion provides that "[i]t is agreed that no coverage shall apply under this policy for any claim, demand or suit based on Assault and Battery, and Assault and Battery shall not be deemed an accident, whether or not commited [sic] by or at the direction of the insured." [8]

▆▆▆ An insurer's duty to defend is limited to suits which assert claims for which the insurer has assumed liability under the policy. *Continental Casualty Co. v. Alexis I. duPont School District*, 317 A.2d 101, 103 (Del.1974). In determining whether a third party's action against the insured states a claim covered by the policy, the court must look to the allegations of the complaint. *Id.* The test is whether the complaint alleges a risk within the coverage of the policy. *Id.* If there is doubt as to whether the complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insured. *Id.* at 105.

▆▆▆ As stated above, the Superior Court complaint alleges that Nanticoke is liable for the assault on the basis of respondeat superior. The complaint also alleges that Nanticoke is responsible on the basis of its own negligence or recklessness for, *inter alia*, hiring Hargett; failing to supervise him; permitting alcohol to be served to him; failing to prevent or stop the altercation from occurring; and failing to provide adequate security for patrons.

The court finds that, based on the assault and battery exclusion, the complaint does not allege a risk covered by the policy.

First, the plain language of the exclusion bars coverage for any claim based on assault and battery. Gibbs' complaint in Superior Court is clearly based entirely on the assault. All the issues the complaint raises about Nanticoke's negligence or recklessness concern conduct of Nanticoke that helped make the assault possible, and are thus fundamentally premised on the assault itself. Second, the U.S. District Court for the Eastern District of Pennsylvania has interpreted the same exclusion in other Terra Nova policies and has concluded that such a provision does exclude coverage for the negligence of a tavern owner that indirectly enabled an assault to occur. In *Terra Nova Ins. Co. v. Thee Kandy Store, Inc.*, the insured, which operated a bar and restaurant, was sued in Pennsylvania state court by a patron who was assaulted by the insured's employees. 679 F.Supp. 476, 476, 478 (E.D.Pa.1988). The insurance policy had an assault and battery exclusion identical to the one in the case at bar. *Id.* at 477. The patron asserted, however, that the insured was negligent in preventing the assault. *Id.* at 478. Nonetheless, the court found that the exclusion relieved the insurance company of liability in the state court suit. *Id.* The court noted that, "[r]egardless of the language of the allegations, the original cause of the harm arose from an alleged assault and battery." *Id.; accord Terra Nova Ins. Co. v. North Carolina Ted, Inc.*, 715 F.Supp. 688, 691 (E.D.Pa.1989). In another case also involving an assault by a tavern employee on a patron, the insured/employer was charged with a list of negligent acts very similar to the acts charged in the case at bar. *Terra Nova Ins. Co. v. Powhattan Club, Inc.*, Civ.Action No. 86–7413, slip op., 1987 WL 18590 (E.D.Pa. Oct. 15, 1987).

---

7. Further, defendants incorrectly invoke the doctrine of reasonable expectations. That doctrine applies to an insurance policy only if the terms are ambiguous or conflicting, if the policy contains a hidden trap or pitfall, or if the fine print purports to take away what is stated in large print. *Hallowell v. State Farm Mutual Automobile Ins. Co.*, 443 A.2d 925, 928 (Del. 1982). The doctrine does not apply to create contractual provisions.

8. The assault and battery exclusion is unsigned. However, an unsigned endorsement may be binding if it is incorporated into the policy by reference. *See* 1 G. Couch, *Cyclopedia of Insurance Law* § 4:35 (2d ed. 1984). Line 7 of the front page of the policy lists "[f]orms and endorsements made part of policy at time of issue". The last item on the list is "A108 (11/76)", which is the form number for the assault and battery exclusion.

The patron alleged, *inter alia*, that the employer failed to provide adequate protection for him; failed to adequately supervise its employees; and failed to properly investigate the dangerous propensities of its employees. *Id.* Again, the policy included an assault and battery exclusion identical to the one in the case *sub judice. Id.* The court granted summary judgment for the insurance company, stating,

> [a]lthough the complaint charges [the employer] with negligence, it is clear that [the patron's] injuries were directly caused by an assault and battery.... The fact that [the employer] may have been negligent in allowing the assault and battery to occur does not avoid the effect of the exclusion.... The main gravamen of the claim is that [the patron's] injuries arose out of an assault and battery, which, in its turn, arose out of the negligent hiring of defendants' employees.

*Id.* The court is persuaded by this reasoning, and therefore finds that Terra Nova has no duty to defend or indemnify Nanticoke in the state court suit based on the policy's assault and battery exclusion.[9],[10] The court thus grants summary judgment for plaintiff.

An Order will issue in accordance with this Opinion.

---

**9.** Defendants cite to a case holding that an insurance policy which does not cover an intentional tort committed by the insured's employees may cover negligent hiring of those employees. *State Security Ins. Co. v. Globe Auto Recycling Corp.,* 141 Ill.App.3d 133, 95 Ill.Dec. 539, 541, 490 N.E.2d 12, 14 (1986). That case, however, did not involve a policy with an assault and battery exclusion. *See id.* 95 Ill.Dec. at 540, 490 N.E.2d at 13.

**10.** Because of its holding, the court need not address the applicability of the other exclusion, which was a liquor liability exclusion.