**BROSNAHAN BUILDERS, INC.,
Kevin Brosnahan and Linda
Brosnahan, Plaintiffs,**

v.

**HARLEYSVILLE MUTUAL
INSURANCE COMPANY,
Defendant.**

**No. CIV.A. 00–339–SLR.**

United States District Court,
D. Delaware.

March 30, 2001.

John S. Spadaro, Murphy Spadaro & Landon, Wilmington, DE, for plaintiffs.

Keith E. Donovan, Swartz, Campbell & Detweiler, Wilmington, DE, for defendant.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

### I. INTRODUCTION

Plaintiffs Brosnahan Builders, Inc., Kevin Brosnahan and Linda Brosnahan filed this action on March 24, 2000 seeking a declaratory judgment that their general liability insurer, defendant Harleysville Mutual Insurance Company, must defend them in an underlying lawsuit, *Pinkert v. John H. Olivieri, P.A.*, No. 99–380–SLR, filed in this court on June 16, 1999.[1] Plaintiffs also allege breach of contract, bad faith breach of contract, and breach of the contractual duty of fair dealing. The court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1332. Currently before the court are plaintiffs' motion for summary judgment on the duty to defend (D.I.12), and defendant's cross-motion for summary judgment on the duty to defend and indemnify (D.I.16). For the reasons that follow, the court shall grant defendant's cross-motion for summary judgment on the duty to defend[2] and deny plaintiffs' motion for summary judgment.

### II. BACKGROUND

Plaintiff Brosnahan Builders, Inc. ("Brosnahan Builders") is a Delaware corporation whose primary business is the construction of single-family housing. Plaintiffs Kevin and Linda Brosnahan, husband and wife, are the owners and sole operators of Brosnahan Builders. (D.I. 1

---

1. In October 2000, defendant agreed to defend plaintiffs in the *Pinkert* case, although reserving its rights to withdraw from all or part of the defense pending the court's decision on this motion. (D.I.28) Plaintiffs still seek costs for defending the *Pinkert* action prior to October 2000, for which defendant has not agreed to reimburse plaintiffs.

2. The court's determination that defendant has no duty to defend plaintiffs renders defendant's arguments supporting limited indemnification and apportionment of costs moot. Plaintiffs' remaining claims in this action are based on the duty to defend and are also moot, as is plaintiffs' conditional motion for summary judgment on bad faith. (D.I.40)

at ¶¶ 5–7) Defendant Harleysville Mutual Insurance Company is a mutual company organized under the laws of Pennsylvania, primarily engaged in the business of insurance. (D.I. 4 at ¶¶ 8) Defendant is regularly engaged in the sale of insurance products in Delaware, and through those operations came to be plaintiffs' general liability insurer. (*Id.* at ¶ 9)

## A. The Insurance Policy

Defendant issued to plaintiffs its policy no. CB–8A4826 (the "Policy") for an initial annual period from March 25, 1992 through March 25, 1993, and continuing thereafter on an annual renewal basis through at least March 25, 2000. (D.I. 14 at A1) The Policy provides both property insurance and Comprehensive Business Liability insurance, the latter provided with limits of $1 million for each occurrence, $2 million in the aggregate for injury or damage generally, and $2 million in the aggregate for injury or damage that comes within the Policy's "products—completed operations hazard" definition. (*Id.* at A66) The Policy designates as an insured the executive officers and directors of Brosnahan Builders "with respect to their duties as ... officers or directors." (*Id.* at A99) It also designates as insureds any employees of the company "for acts within the scope of their employment." (*Id.*)

The Policy requires defendant to defend any "suit" that seeks damages because of "property damage" that occurs during the Policy's period and is caused by an "occurrence." (D.I. 18 at B41) A "suit" is defined as "a civil proceeding in which damages because of ... property damage ... to which this insurance applies are alleged." (*Id.* at B52) "Property damage" is "[p]hysical injury to tangible property, including all resulting loss of use of that property; or [l]oss of use of tangible property that is not physically injured." (*Id.*) The term "occurrence" is defined as "an

accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*)

The Policy then lists several exclusions to illustrate situations when the business liability coverage does not apply. Those pertinent to this case include:

a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

j. "Bodily injury" or "property damage" due to rendering or failure to render any professional service. This includes but is not limited to:

(1) Engineering, drafting, architectural, legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications.

(3) Supervisory, inspection or engineering services;

(4) Any cosmetic or tonsorial service or treatment;

(5) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(6) Ear piercing services; and

(7) Services in the practice of pharmacy; but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

k. "Property damage" to:

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work"[3] was incorrectly performed on it.

Paragraph (6) of [exclusion "k"] does not apply to "property damage" included in the "products-completed operations hazard."[4]

l. "Property damage" to "your product"[5] arising out of it or any part of it.

m. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n. "Property damage" to "impaired property"[6] or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

**3.** "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in "a" or "b" above. (D.I. 18 at B53)

**4.** "Products—Completed Operations Hazard" includes all "bodily injury" and "property damage" arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
(D.I. 18 at B52)

**5.** "Your Product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in "a" and "b" above.

**6.** "Impaired Property" is tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

(1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

(2) Your fulfilling the terms of the contract or agreement.

(D.I. 18 at B–50)

This exclusion does not apply to the loss of use of other property arising out of a sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

o. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product,"

(2) "Your work," or

(3) "Impaired property;"

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(*Id.* at B44–B45)

### B. The *Pinkert* Litigation

In September 1997, Brosnahan Builders was hired by Michael and Eleanor Pinkert ("the Pinkerts") to construct a residential home in Bethany Beach, Delaware. Construction began in approximately September 1997 and continued through approximately April 1999. (*Id.* at A11–A12)

Defendant received notice of a claim in late January 1999, in which the Pinkerts alleged that the work performed by plaintiffs on their home was defective. (D.I. 14 at A7) Consequently, plaintiffs and defen-dant executed a "Non–Waiver Agreement" which permitted defendant to investigate the Pinkerts' claim and reserved all of defendant's rights under the Policy. (D.I. 18 at B58–B59) In a written disclaimer dated February 24, 1999, defendant stated that it would not defend plaintiffs because plaintiffs' "work" and "product" were not covered under the Policy. (*Id.* at A7)

On June 16, 1999, the Pinkerts filed a lawsuit against plaintiffs, among others, seeking damages and other relief in connection with the construction of their home. The allegations directed at Kevin and Linda Brosnahan arise from their duties as officers of Brosnahan Builders and from acts within the scope of their employment. (*Id.* at A10–A26) The *Pinkert* complaint seeks damages against plaintiffs for breach of contract, fraud, equitable fraud, and violations of the Consumer Fraud Act.[7] Specifically, the complaint alleges the following:

13. In response to [the Pinkerts' concerns about water and moisture penetration, the architect's] design required the use of above-standard construction measures and materials that would limit water and moisture penetration, including the installation of an expensive "Griffolyn" building wrap system that is more typically used in commercial projects. [The architect] also provided details for aluminum flashing around all

---

7. The counts alleging fraud (V, VI, VII) claim that: (1) plaintiffs "made false representations of material facts," (2) they "knew the representations were false or recklessly disregarded the truth of the representations," (3) they "made the representations with the intent to induce [the Pinkerts] to pay for the work allegedly performed," and (4) "as a proximate and foreseeable result of [plaintiffs'] misrepresentations, [the Pinkerts] incurred damages." (D.I. 14 at A20–A23)

The counts alleging violation of Delaware's Consumer Fraud Act, 6 Del. C. § 2513, (IX, X, XI) claim that: (1) plaintiffs "made false or misleading representations of material facts in connection with the sale of construction services to [the Pinkerts]," (2) they "suppressed or omitted material facts, creating a condition of falseness, in connection with the sale of construction services to [the Pinkerts]," (3) they "made the representations, suppressions, or omissions with the intent to have [the Pinkerts] rely on them," and (4) "as a proximate and foreseeable result of plaintiffs' misrepresentations, suppressions, and omissions, [the Pinkerts] incurred damages." (*Id.* at A25–A29)

doors and windows and roof vents to deflect or remove moisture that might get in the walls. In addition, extensive use of fiberglass was specified on the roof and decks with specific details given in the plans and specifications calling for the fiberglass to be run a minimum of eight inches up all walls to ensure that wind driven water would not get behind the fiberglass. These are all *critical* design elements of the house that were discussed in the early planning stages with [the architect], and later with Defendant Brosnahan, the construction contractor.

. . . . .

15. Construction of the residence began during September 1997 and continued through April 1999. During construction, both the architect and the contractor were aware of construction deficiencies relating to water and moisture proofing. These deficiencies included missing flashing, fiberglass installation at less than the specified height, and improper installation of the Griffolyn wrap system. Notwithstanding this knowledge, the architect and the contractor repeatedly assured the Plaintiffs, both orally and in writing, that these problems were, or would be, corrected.

. . . . .

22. After examining [certain leaks that developed after the Pinkerts moved into the residence], Defendant Kevin Brosnahan admitted the following:

(a) The Griffolyn system installed was not the one specified;

(b) Mastic tape, which is an integral part of the Griffolyn water proofing system, was not used anywhere on the house; and

(c) There was no aluminum flashing around any of the windows that leaked.

(D.I. 14 at A12–A13)

On July 7, 1999, after reviewing the complaint, defendant again confirmed its decision not to defend plaintiffs, and reserved its right to rely on any other Policy exclusions whether or not they were previously mentioned. (*Id.* at A30–A44) On October 4, 1999, defendant's attorney wrote to plaintiffs' attorney, reiterating defendant's conclusion that the claim was not covered under the Policy. (D.I. 14 at A50)

On July 12, 2000, plaintiffs filed a third party complaint against various subcontractors alleging that some of the construction defects claimed by the Pinkerts were the responsibility of the subcontractors. (D.I.28) On October 16, 2000, defendant undertook plaintiffs' defense in the *Pinkert* action, subject to the court's determination of the existence of a duty to defend and a reservation of rights to deny indemnification. (*Id.*)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life*

*Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

■ This case raises issues of contract construction which are questions of law to be addressed by the court. *See Pellaton v. Bank of New York,* 592 A.2d 473, 478 (Del.1991). The parties agree that Delaware law must be applied to the case. *See Chesapeake Util. Corp. v. Am. Home Assur. Co.,* 704 F.Supp. 551, 556 (D.Del.1989) (holding that under choice of law rules for contract disputes in Delaware, court must apply law of state of location of insured property in liability coverage dispute). Upon reviewing the Policy and the *Pinkert* complaint, the court concludes that defendant does not have a duty to defend plaintiffs in the *Pinkert* litigation either because the claim is not covered by the Policy or because the claim falls under Policy Exclusions "j", "k(5)" or "n".

## A. The Claim is Not Covered By the Policy Because the Damage Was Not Caused By An "Occurrence"

■ The insured bears the burden of proving that a claim is covered by an insurance policy. *See New Castle County v. Hartford Accident and Indem. Co.,* 933 F.2d 1162, 1181 (3d Cir.1991). Under Delaware law, an insurer has a duty to defend the insured if the allegations in the underlying complaint fall within the terms of the insurance policy. *See Continental Cas. Co. v. Alexis I. duPont Sch. Dist.,* 317 A.2d 101, 103 (Del.1974). The test is whether the underlying complaint, read as a whole, alleges a risk within the coverage of the policy. *See id.* at 105. The Delaware Supreme Court has articulated the following principles to be applied when performing this analysis:

(1) when there exists some doubt as to whether the complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insured;

(2) any ambiguity in the pleadings should be resolved in favor of the insured;

(3) if even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises.

*See id.* at 105.

■ Thus, in Delaware, an insurer's duty to defend its insured arises when the allegations of the underlying complaint show a potential that liability within coverage will be established. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rhone–Poulenc Basic Chems. Co.,* No. 87C–SE–11, 1992 WL 22690, at *7 (Del.Super.Ct. Jan.16, 1992). *See also C.H. Heist Caribe Corp. v. Am. Home Assur. Co.,* 640 F.2d 479, 483 (3d Cir.1981) (stating that duty to

defend arises "if the allegations of the complaint state on their face a claim against the insured to which the policy potentially applies," and that "the factual allegations of [the third party's] complaint against [the insured] are controlling") (citation omitted) (emphasis in original); *New Castle County v. Hartford Accident and Indem. Co.*, 673 F.Supp. 1359, 1367 (D.Del.1987) (recognizing that under Delaware law "insurers are required to defend any action which potentially states a claim which is covered under the policy").

The Policy states that defendant must defend any "suit" against plaintiffs that seeks damages because of "property damage" that is caused by an "occurrence." The parties agree that the Pinkerts have filed a "suit" against plaintiffs because of "property damage." The parties disagree on whether that "property damage" was caused by an "occurrence." The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Therefore, the court must determine whether the damage to the Pinkerts' home was caused by an "accident."

In *State Farm Fire and Cas. Co. v. Hackendorn*, 605 A.2d 3, 8 (Del.Super.Ct.1991), a case concerning coverage under a homeowners' policy where the claim involved bodily injury from a gunshot, the court stated that in defining an accident, an incident must be examined by "(1) taking the point of the injured person and/or (2) looking at the insured's conduct." The court also cited Black's Law Dictionary, which states that in the context of accident insurance contracts, "[a]n accident ... is an event happening without human agency, or, if happening through such agency, an event, which under circumstances, is unusual and not expected by the person to whom it happens." *Id.* at 7. *See also Camac v. Hall*, 698 A.2d 394, 396 (Del.Super.Ct.1996). Although the un-

derlying claim and insurance policy in *Hackendorn* are different than those in the case at bar, the general principle is equally applicable here.

The Pinkerts allege breach of contract and several counts of fraud arising out of a claim of defective workmanship by plaintiffs. Specifically, the Pinkerts claim that plaintiffs were directed to install specific water proofing materials and failed to do so, and that the materials used were installed improperly. The Pinkerts also claim that plaintiffs misrepresented, either intentionally or with reckless disregard, the nature of their workmanship. The situation that led to the damage to the Pinkerts' home was clearly within the control of plaintiffs, as general contractor of the construction project, and not a fortuitous circumstance happening "without human agency." The "property damage" to the Pinkerts' home was not caused by an "occurrence" and, therefore, the claim is not covered under the Policy.

### B. Even If Covered Under the Policy, the *Pinkert* Claim Falls Under Certain Policy Exclusions

Even if coverage were established, an insurer will be excused from its duty to defend if, as a matter of law, policy exclusions or exemptions apply. *See Rhone–Poulenc*, 1992 WL 22690, at *8. The burden is on the insurer to establish that policy exclusions apply in a particular case, and that they are subject to no other reasonable interpretation. *See Deakyne v. Selective Ins. Co. of America*, 728 A.2d 569, 571 (Del.Super.Ct.1997). Therefore, in order to avoid the duty to defend, the insurer must demonstrate that the allegations of the underlying complaint are "solely and entirely" within specific and unambiguous exclusions from coverage. *Rhone–Poulenc*, 1992 WL 22690, at *8. The parties dispute seven Policy exclusions that are potentially relevant to the case at

bar.[8] The court will address each exclusion *seriatim.*

### 1. Exclusion "a" Does Not Apply to the Claim

 Exclusion "a" states that any claim for "property damage" that is "expected or intended from the standpoint of the insured" is excluded from coverage. Damage is not "intended" if the allegations of the underlying complaint allege civil recklessness. *See Capano Mgmt. Co. v. Transcon. Ins. Co.,* 78 F.Supp.2d 320, 330 (D.Del.1999). "Expected" can be defined as a "substantial probability," and requires more than a "reasonable foreseeability." *New Castle County v. Continental Cas. Co.,* 725 F.Supp. 800, 813 (D.Del.1989). *See also Farmer in the Dell Ent. v. Farmers Mut. Ins.,* 514 A.2d 1097, 1100 (Del. 1986) ("Where the tortfeasor clearly lacks the intent to inflict any damage or injury, and it is not foreseeable that damage will occur, the exclusion will not apply."); *Rhone–Poulenc,* 1992 WL 22690, at *16 ("The specific allegations of negligence indicate a potential for coverage and therefore militate against a conclusion as a matter of law that [the insured] expected or intended to discharge a pollutant.").

In the case at bar, the Pinkerts allege that plaintiffs committed fraud because they either "knew the representations were false or recklessly disregarded the truth of the representations." In other words, the plaintiffs can be liable for fraud and breach of contract without intending to cause the property damage. Although the Pinkerts allege that the damage to their home was "a proximate and foresee-able result" of plaintiffs' misrepresentations, the court is not persuaded that if plaintiffs acted recklessly, they would expect the damage to be a "substantial probability." Therefore, the court concludes that since the *Pinkert* complaint alleges liability without intent, Exclusion "a" does not apply. *See, e.g., Ash/Ramunno Assoc. v. Nationwide Mut. Fire Ins. Co.,* No. 95C–11–158, 1996 WL 658819, at *2 (Del.Super. Oct.22, 1996) (holding that since there was question of fact as to whether insured's actions were intentional or negligent, insurer had duty to defend).

### 2. Exclusion "j" Applies to the Claim

 Exclusion "j" states that a claim for "property damage" due to "rendering or failure to render any professional service" is excluded from coverage. Examples of such professional services include "supervisory, inspection or engineering services." Plaintiffs, as general contractor of the Pinkerts' construction project, were directly responsible for supervising and inspecting the work of the subcontractors to ensure that the home was built properly and in accordance with the terms of the contract. Therefore, since plaintiffs failed to install the correct waterproofing materials, or ensure that the subcontractors did so, plaintiffs did not adequately render a "professional service" and Exclusion "j" applies to the claim.

### 3. Exclusion "k(5)" Applies to the Claim [9]

 This exclusion applies to property damage to "real property on which

---

8. The court finds no evidence of a clear waiver by defendant of any rights under the Policy. The court, therefore, will address the exclusions raised by the parties in their briefs.

9. Exclusions "k" through "o" are commonly referred to as "business risk exclusions," which "are designed to protect insurers from contractors' attempts to recover funds to cor-rect deficiencies caused by the contractors' questionable performance. Their use demonstrates the insurers' belief that the cost of not performing well is a cost of doing business and not considered part of the risk sharing scheme for which general liability policies are written.... The coverage is for tort liability for physical damages to others and not for

you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the property damage arises out of those operations." The Pinkerts' home is considered "real property," and plaintiffs, themselves or through subcontractors, were performing "operations" on that property. The "property damage" to the Pinkerts' home resulted from the defective "operations" of plaintiffs, or their subcontractors. Therefore, Exclusion "k(5)" applies to the claim and excludes it from coverage under the Policy.[10]

### 4. Exclusion "l" Does Not Apply to the Claim

■ Exclusion "l" applies to property damage to "your product" arising out of it, but "your product" does not include "real property." Because the Pinkerts' home is considered "real property," the court concludes that Exclusion "l" does not apply.

### 5. Exclusion "m" Does Not Apply to the Claim

■ Exclusion "m" excludes from coverage a claim arising out of property damage to "your work" and included in the "products-completed operations hazard." However, the exclusion does not apply if the damaged work was "performed on your behalf by a subcontractor." The construction of the Pinkerts' home clearly qualifies as "your work," and was completed at the time of the damage, as required by the "products-completed operations hazard." The *Pinkert* complaint, however, does not state that the specific work was performed by subcontractors. Because the court must consider only the allegations in the complaint, Exclusion "m" excludes the claim from coverage under the Policy.[11]

### 6. Exclusion "n" Applies to the Claim

■ Exclusion "n" excludes from coverage damage to "impaired property" or undamaged property that has an inherent defect or is not in accordance with the terms of a contract. The court concludes that the Pinkerts' residence is tangible property that is less useful because it incorporates deficient "work" by plaintiffs or is in violation of a contract, and can be restored to use by plaintiffs. Because the Pinkerts' residence is "impaired property," Exclusion "n" applies to the claim and excludes it from coverage under the Policy.

### 7. Exclusion "o" Does Not Apply to the Claim

■ Exclusion "o" is commonly known as the "sistership exclusion," and "operates to bar coverage for costs associated with the recall or removal of the product from

---

contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." *Vari Builders, Inc. v. U.S. Fid. and Guar. Co.*, 523 A.2d 549, 551 (Del.Super.Ct.1986).

10. The parties also disagree on whether Exclusion "k(6)" applies to the claim. The court concludes that because Exclusion "k(6)" does not apply to completed work, and the Pinkerts' home was complete when the property damage occurred, Exclusion "k(6)" does not exclude the claim from coverage under the Policy.

11. Plaintiffs argue that because the *Pinkert* complaint is silent as to the role of subcontractors, the court may go beyond the four corners of the complaint to consider an affidavit by Kevin Brosnahan. Even if the court is allowed to consider this affidavit, however, the court finds it inconclusive. Kevin Brosnahan does not state that all of the work that led to the property damage suffered by the Pinkerts was performed solely by subcontractors. (D.I. 14 at A139–A141)

the marketplace." *Hoechst Celanese Corp. v. Nat'l Union Fire Co. of Pittsburgh, PA.,* No. 89C–SE–35, 1994 WL 721631, at *2 (Del.Super. Apr.13, 1994). The court concludes that this exclusion is not relevant to the case at bar, as the Pinkerts have not alleged damages for removal of the product from the market.

## V. CONCLUSION

For the reasons stated, defendant's cross-motion for summary judgment on the duty to defend is granted, and plaintiffs' motion for summary judgment is denied. An appropriate order shall issue.