# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, INC., | ) ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. N14C-06-214 ALR |
| | ) | |
| MIRANDA & HARDT CONTRACTING AND BUILDING SERVICES, L.L.C., | ) ) ) | |
| Defendant. | ) ) | |

Submitted: March 3, 2015
Decided: March 30, 2015

## MEMORANDUM OPINION

*Upon Plaintiff's Motion for Judgment on the Pleadings — GRANTED*
*Upon Defendant's Counter-Claim for Declaratory Judgment — DENIED*

Marc S. Casarino, Esquire, White and Williams LLP, Wilmington, Delaware, Attorneys for Plaintiff.

John A. Sergovic, Jr., Esquire, Sergovic, Carmean & Weidman, P.A., Georgetown, Delaware, Attorneys for Defendant.

**Rocanelli, J.**

This matter involves a dispute over insurance coverage between Plaintiff, Westfield Insurance Company, and Defendant, Miranda and Hardt Contracting and Building Services, L.L.C.. Plaintiff has issued a commercial general liability insurance policy annually to Defendant since November 5, 2003.

On June 23, 2014, Plaintiff filed a complaint requesting a declaratory judgment regarding its duty, if any, to defend or indemnify Defendant in an underlying lawsuit pursuant to the terms of Defendant's insurance policy issued by Plaintiff. On September 10, 2014, Defendant filed an amended answer as well as a counter-claim for a declaratory judgment against Plaintiff. On December 4, 2014, Plaintiff filed the pending motion for judgment on the pleadings. Defendant opposes Plaintiff's motion. The Court heard oral argument on March 3, 2015. For the following reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED**.

## I. BACKGROUND

### A. The Parties

Plaintiff is an Ohio corporation with a principal place of business in Westfield Center, Ohio. Defendant is a Delaware limited liability company with a registered agent, Frank A. Miranda, located in Oceanview, Delaware.

**B. Underlying Lawsuit**

Sometime during 2004 through 2005, Defendant constructed a home pursuant to a contract with Fenwick Ventures, LLC ("Fenwick"). On or about April 6, 2006, Barry L. Pfautz and Patricia R. Pfautz ("Complaining Homeowner") purchased the home from Fenwick. Approximately six years after the purchase, in April 2012, Complaining Homeowner contacted Fenwick to report concerns about defects in the home's construction. On February 28, 2014, Complaining Homeowner filed a complaint against Fenwick and Defendant in the Superior Court for Sussex County ("Underlying Lawsuit").[1]

In the Underlying Lawsuit, Complaining Homeowner alleges that, during the construction of the home, Defendant (i) deviated from the approved building plans, (ii) used inadequate building materials, (iii) improperly installed building materials, (iv) violated applicable building codes, and (v) fraudulently represented that the home was properly constructed. In its complaint, Complaining Homeowner asserts claims against Defendant for (i) negligence per se, (ii) negligence, and (iii) fraud.

**C. Defendant's Insurance Claim**

In March 2014, after receiving service of process, Defendant notified Plaintiff of the Underlying Lawsuit and requested defense and indemnification

---

[1] *Pfautz v. Fenwick Ventures, LLC*, No. S14C-02-040 (Del. Super., filed Feb. 28, 2014).

from Plaintiff pursuant to Defendant's insurance policy. By letter dated April 4, 2014, Plaintiff informed Defendant that the insurance policy did not provide a duty to defend or indemnify for the claims asserted against Defendant in the Underlying Lawsuit.

## II. LEGAL STANDARD

Superior Court Civil Rule 12(c) governs motions for judgment on the pleadings. A party may file a motion for judgment on the pleadings "after the time for pleadings ends but within such time as not to delay trial."[2] When considering a Rule 12(c) motion, the Court shall draw any reasonable inferences in favor of the non-moving party.[3] The Court shall grant the motion where, based on the pleadings, there are no issues of material fact and the movant is entitled to judgment as a matter of law.[4]

## III. DISCUSSION

Plaintiff's motion turns on construction of the policy, an insurance contract, which is a question of law.[5] To make a determination on the Plaintiff's motion for declaratory judgment, motion for judgment on the pleadings, and Defendant's counter-claim for declaratory judgment, the Court must compare the language of

---

[2] Super. Ct. Civ. R. 12(c).
[3] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *Wilmington Sav. Fund. Soc'y., F.S.B. v. Meconi*, 1989 WL 124888, at *1 (Del. Super. Oct. 3, 1998).
[4] *Desert Equities, Inc.*, 624 A.2d at 1205.
[5] *Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co.*, 137 F. Supp. 2d 517, 525 (D. Del. 2011); *Pellaton v. Bank of New York,* 592 A.2d 473, 478 (Del. 1991).

the applicable insurance policy with the allegations against Defendant in the complaint in the Underlying Lawsuit.

## A. Applicable Insurance Policy

Even though the parties express disagreement in their written submissions as to which insurance policy is applicable to this coverage dispute, at oral argument the parties acknowledged that it is a distinction without a difference. Plaintiff has issued an annual commercial general liability insurance policy to Defendant every year since November 5, 2003, and each annual policy contains the same language as to the relevant portions of the policy for purposes of this coverage dispute. Every annual policy is occurrence-based and the house at issue in the Underlying Lawsuit was constructed between 2004 and 2005, when applicable policies were in effect. Accordingly, this decision would be the same regardless of which specific policy is applicable.

## B. Duty to Defend or Indemnify

Under Delaware decisional law, "the duty to defend is determined by factual allegations of the [underlying] complaint."[6] "The test is whether the underlying complaint, read as a whole, alleges a risk within the coverage of the policy, thus invoking the insurer's duty to defend."[7] The Court will resolve any ambiguity or

---

[6] *Goodville Mut. Cas. Co. v. Baldo*, 2011 WL 2181627, at *2 (D. Del. June 3, 2011) (citing *Brosnahan Builders, Inc.*, 137 F. Supp. 2d at 525-26).
[7] *Brosnahan Builders, Inc.*, 137 F. Supp. 2d at 525.

doubt as to whether the underlying complaint alleges a risk covered under the policy in favor of the insured.[8] Further, if even one count or theory of the underlying complaint alleges a risk covered under the policy, the duty to defend arises.[9] The insured party bears the burden of proving that the underlying complaint alleges claims that trigger the duty to defend.

Here, the policy's relevant language begins with the grant of coverage, which provides:

> [Plaintiff] will pay those sums that [Defendant] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Plaintiff] will have the right and duty to defend [Defendant] against any "suit" seeking those damages. However, [Plaintiff] will have no duty to defend [Defendant] against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.[10]

The policy states that coverage "applies to 'property damage' only if . . . [t]he 'property damage' is caused by an 'occurrence.'"[11] The policy defines "property damage," and "occurrence" as:

> "Property damage" means: (a) [p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) [l]oss of use of tangible property that is not physically

---

[8] *Id.* (citing *Continental Cas. Co. v. Alexis I. DuPont Sch. Dist.*, 317 A.2d 101, 105 (Del. 1974)).
[9] *Id.*
[10] Pl.'s Mot, Ex. B. at B87 (Policy, § I.1.a).
[11] *Id.* at Ex. B. at B87 (Policy, § I.1.b).

injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.[12]

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[13]

The parties agree that there is an Underlying Lawsuit against Defendant because of alleged "property damage." However, the parties dispute whether that "property damage" was caused by an "occurrence."

Plaintiff contends it has no duty to defend or indemnify Defendant in the Underlying Lawsuit because there has not been an "occurrence" to trigger such duties. According to Plaintiff, "[s]ince the only allegations [in the Underlying Lawsuit] against [Defendant] are for defective workmanship, there has not been an 'occurrence' for purposes of the Policy."[14] Further, Plaintiff contends that a comparison of "the *undisputed allegations* of the Underlying Lawsuit to the Policy language leads to the inescapable conclusion that judgment must be entered for [Plaintiff] because the Policy does not provide coverage for defective workmanship."[15] Plaintiff references its complaint for declaratory judgment as well as Defendant's amended answer thereto and states that Defendant "admit[ed] the accuracy of the description of the underlying complaint, but denies liability."[16]

---

[12] *Id.* at Ex. B. at B101 (Policy, § V.1(a), (b)).
[13] *Id.* at Ex. B. at B100 (Policy, § V.13).
[14] Pl.'s Mot. ¶ 5.
[15] *Id.* at ¶ 2.
[16] *Id.* at n. 6.

6

In opposition, Defendant argues that it is "entitled to an inference that there was no defective workmanship based upon its denial of [the allegations]" and argues that defective workmanship has not yet been proven in the Underlying Lawsuit.[17]  Defendant also argues that the complaint in the Underlying Lawsuit, per Complaining Homeowner's expert report, alleges structural issues with the floors and Defendant claims that such structural issues are the result of construction defects arising out of "pilings."[18]  Defendant suggests that it is not liable for those alleged defects because the pilings were in place before Defendant entered into the construction contract with Fenwick to build the home.

The decisions of the United States District Court for the District of Delaware are instructive.  That Court has held that "an occurrence requires an accidental or unexpected event."[19]  An accident—in the context of insurance contracts—"is an event happening without human agency, or, if happening through such agency, an event, which under circumstances, is unusual and not expected by the person to whom it happens."[20]  These definitions are in accordance with the principle that "defective workmanship does not constitute an occurrence for purposes of a commercial general liability policy,"[21] because such action is within the control of

---

[17] Def.'s Resp. ¶¶ 2, 4.
[18] *Id.* at ¶ 4.
[19] *Goodville Mut. Cas. Co.*, 2011 WL 2181627, at *3 (citation omitted).
[20] *Brosnahan Builders, Inc.*, 137 F. Supp. 2d at 526.
[21] *Goodville Mut. Cas. Co.*, 2011 WL 2181627, at *3 (citation omitted).

the worker "and not a fortuitous circumstance happening 'without human agency.'"[22]

Therefore, a commercial generally liability policy, such as the policy issued by Plaintiff, is "not intended to serve as a performance bond or guaranty of goods or services."[23] As such, an allegation of defective workmanship does not constitute an "occurrence" for which the policy grants coverage or triggers Plaintiff's duty to defend or indemnify Defendant in the Underlying Lawsuit.

There is no dispute that the Underlying Lawsuit alleges defective workmanship and other conduct not covered by the policy. Defendant admitted to the allegations of defective workmanship in its answer to Plaintiff's motion for declaratory judgment and its answer to Plaintiff's motion on the pleadings.[24] While Defendant does deny the substance of the allegations and asserts affirmative defenses against the allegations,[25] this Court is not concerned with the validity of the allegations for the purposes of this coverage dispute. The language of the policy compared with the complaint in the Underlying Lawsuit does not provide Defendant with coverage for property damage that results from its own defective workmanship or property damage that results from the work of another (i.e., the pilings). Accordingly, the Court finds there has not been an "occurrence" to

---

[22] *Brosnahan Builders, Inc.*, 137 F. Supp. 2d at 526.

[23] *Goodville Mut. Cas. Co.*, 2011 WL 2181627, at *3 (citing *E.I. DuPont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 54 (Del. Super. 1995)).

[24] *See* Def.'s Am. Answer ¶¶ 15, 16; Def.'s Resp. ¶ 2.

[25] *See* Def.'s Am. Answer ¶¶ 15, 16; Def.'s Resp. ¶ 4.

trigger Plaintiff's duty to defend or indemnify Defendant in the Underlying Lawsuit.[26]

## IV. CONCLUSION

Upon consideration of the allegations of the complaint in the Underlying Lawsuit; the relevant decisional law; the parties' contentions; and the entirety of the record, the Court finds that there are no issues of material fact. Plaintiff is entitled to judgment on the pleadings as a matter of law.

**NOW, THEREFORE, on this 30th day of March 2015, Plaintiff Westfield Insurance Company's Motion for Judgment on the Pleadings is hereby GRANTED and Defendant Miranda and Hardt Contracting and Building Services' Counter-Claim for Declaratory Judgment is hereby DENIED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____
**The Honorable Andrea L. Rocanelli**

---

[26] The Court does not address Defendant's argument that Plaintiff must defend and/or indemnify Defendant in the Underlying Lawsuit under the Policy's "products-completed operations hazard" exemption. In order for the Court to find that an exemption might be applicable, there must have been a threshold finding of applicable coverage. Because the Court concludes there is no insurance coverage under an occurrence policy for allegations of defective workmanship, there is no need to consider whether there are exclusions from coverage.