# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN RE: ASBESTOS LITIGATION

JANE ROWLAND, and DOUGLAS
ROWLAND, her husband,

    Plaintiffs,

    v.

AMERICAN BILTRITE, INC.,
Individually and as successor to
AMTICO FLOORS et al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N16C-02-186 ASB

Submitted: April 16, 2019
Decided: April 24, 2019

## OPINION

*Upon Defendant Union Carbide Corporation's
Motion for Summary Judgment*, **GRANTED.**

Ipek K. Medford, Esq., Bartholomew J. Dalton, Esq., Andrew C. Dalton, Esq., and Michael C. Dalton, Esq., of Dalton & Associates, P.A., Wilmington, Delaware; Adam Balick, Esq. and Patrick J. Smith, Esq. (*argued*), of Balick & Balick, LLC, Wilmington, Delaware; Weitz & Luxenberg, P.C., New York, New York (Of Counsel). *Attorneys for Plaintiffs.*

Beth E. Valocchi, Esq., Joseph S. Naylor, Esq. (*argued*), and Bryan P. Smith, Esq., of Swartz Campbell, LLC, Wilmington, Delaware. *Attorneys for Defendant Union Carbide Corporation.*

**MEDINILLA, J.**

## INTRODUCTION

In this asbestos case, Jane and Douglas Rowland ("Plaintiffs") allege that Ms. Rowland developed mesothelioma from exposure to asbestos-containing products associated with multiple defendants, including Union Carbide Corporation ("Union Carbide" or "Defendant"). Union Carbide moves for summary judgment under Superior Court Civil Rule 56 arguing that Plaintiffs cannot meet their burden on the issue of product identification or, alternatively, that they fail to establish that a duty to warn is due to Plaintiffs under Ohio law. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Factual Background*

Ms. Rowland married in 1966.[1] By way of general background only, for fifty years and at least up until the time she was deposed in 2016, she testified that she laundered her husband's clothes.[2] She described shaking out her husband's clothing, which produced dust.[3] Ms. Rowland testified that she was exposed to asbestos from laundering the clothing of her father and husband.[4] Other exposure could have been attributed through her husband when he performed automotive work, and she was

---

[1] Video Deposition of Jane Rowland at 64:13-18.
[2] *Id.* at 64:16-23.
[3] *Id.* at 77:25-78:9.
[4] *Id.* at 27:8-22. Although it is unclear in what capacity her father and husband worked, she believed asbestos exposure came from laundering her father's clothing while he worked at General Motors, and her husband's clothing while he worked at Plastolite.

with him about three or four times when he completed this work.[5]   Ms. Rowland also testified that she believes she was exposed to asbestos through a carpet business that they had for approximately ten years.[6]   As to the matter before the Court, the allegations of exposure are narrower and stem from a period of approximately four years that involved four home renovation projects.

As to Union Carbide, she believes she was exposed to asbestos from 1970 to 1977 because she laundered her husband's clothing and participated in the clean-up of certain home renovation projects in Ohio.   It is undisputed that Mr. Rowland purchased one bag of Georgia-Pacific dry mix joint compound ("dry compound") and two buckets of Georgia-Pacific wet ready mix joint compound ("ready mix") in 1972 or 1973 for use on four separate home projects from 1972-1976.   Specifically, the dry mix joint compound was used for a garage project in 1972 or 1973, and the ready mix was used for shed wall and bathroom projects in 1973, with the remainder used for a garage project in 1976.   The issue here focuses on whether the Plaintiffs can establish that the Georgia-Pacific compound they used in these projects contained the Union Carbide product.

Union Carbide sold raw asbestos to Georgia-Pacific, as one of the manufacturers of joint compound, for use in the products that may have been

---

[5] Video Deposition of Jane Rowland at 64:1-9.
[6] *Id.* at 27:17-19.

purchased by the Rowlands. Union Carbide mined this type of chrysotile asbestos fiber—Calidria—and sold it to sophisticated third-party manufacturers who then used it in their own products. It is undisputed the sales included production-level shipments of Calidria to certain product manufacturers that included, but were not limited to, Georgia-Pacific to its Chicago, Illinois plant from 1970-1977. There is also evidence that Georgia-Pacific obtained the majority of its asbestos from another supplier. Finally, Union Carbide provided its direct customers, like Georgia-Pacific, with health and safety information about asbestos, but did not participate in the product warnings that accompanied their finished products.

### *Procedural Background*

Plaintiffs filed their initial Complaint on February 19, 2016 and allege Ms. Rowland developed mesothelioma from exposure to Union Carbide's Calidria. Their claims include negligence, willful and wanton conduct, strict product liability, and loss of consortium.[7] Defendant filed its Motion for Summary Judgment on January 14, 2019.[8] Oral arguments were heard on April 16, 2019.[9]

---

[7] *See generally* Compl.

[8] Union Carbide initially filed its Motion for Summary Judgment on March 12, 2018, but subsequently filed its Amended Motion for Summary Judgment on January 14, 2019.

[9] Because portions of Union Carbide's Motion for Summary Judgment were unopposed, this Court granted Union Carbide's Motion for Summary Judgment as to all claims alleging exposure from floor tiles manufactured by American Biltrite (Amtico's manufacturer), Armstrong, and Kentile. These claims related to Ms. Rowland's alleged exposure to asbestos through Mr. Rowland's work that included the installation of Amtico, Armstrong, and Kentile floor tile between 1971 through 1974. Therefore, the Court considers only the remaining claims related to the Georgia-Pacific products.

4

## STANDARD OF REVIEW

Delaware Superior Court Civil Rule 56 mandates the granting of summary judgment where the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[10] "Once the movant meets its burden, then the burden shifts to the non-movant to demonstrate sufficiently an existence of one or more genuine issues of material fact."[11] Summary judgment will not be granted if there is a material fact in dispute or if it "seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[12] In considering the motion, "[a]ll facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[13] However, the Court shall not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[14]

---

[10] Super. Ct. Civ. R. 56(c).

[11] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488, 1995 WL 379125, at *4 (Del. June 19, 1995) (TABLE). *See also* Super. Ct. Civ. R. 56(e); *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

[12] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).

[13] *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Palmer*, 343 A.2d 620,621 (Del. 1975); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. 1978)).

[14] *In re Asbestos Litig.*, 509 A.2d 1116, 1118 (Del. Super. 1986), *aff'd sub. nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987).

## DISCUSSION

Plaintiffs argue that the issue of whether they were exposed to a Union Carbide Calidria product should go to the jury for two reasons. First, they argue there is evidence that Georgia-Pacific's Chicago, Illinois plant distributed products to the Midwest, including Ohio where the Rowlands purchased the products in question.[15] Second, they argue that there exist "formula cards" from Georgia-Pacific that establish not only that the ready mix product came out of Chicago, but that it contained Calidria during the relevant time period.[16] In support of their position, and during oral arguments, these formula cards were discussed in great detail and require further explanation.

Union Carbide included as exhibits certain formula cards for ready mix fillers and ready mix joint compounds that Georgia-Pacific produced at its Chicago, Illinois plant. Georgia-Pacific identified Calidria asbestos as "SG-210" on these formula cards. SG-210 was used in Ready Mix Filler C-978 (Filler "X"), and this Filler C-978 was then used in the ready mix joint compound formulas. According to the formula cards provided by Union Carbide for Ready Mix Filler C-978 (Filler "X"), this filler was utilized in two Ready Mix Joint Compounds (C-979 and C-977); one

---

[15] Pl.'s Resp. at 4.
[16] *Id.* at 8-9.

a specialty product and the other generally available to purchasers such as Mr. Rowland.

Through these exhibits, Defendant maintains that there were seven total ready mix formulas available during the relevant time period and only two contained the Calidria filling. Since one ready mix is not at issue because there is no evidence that Mr. Rowland requested this specialty product, Defendant argues that one out of the six Georgia-Pacific ready mix formulas available to Mr. Rowland contained Calidria asbestos. Therefore, Defendant argues Plaintiffs cannot demonstrate that Ms. Rowland was exposed to the Georgia-Pacific ready mix that contained Union Carbide's Calidria asbestos as opposed to another supplier's asbestos.

In response, Plaintiffs produced another formula card that was not provided by Defendant in its exhibits. Plaintiffs argue that Defendant omitted this evidence to skew the statistical significance of its argument and then called into question the bases for Defendant's conclusions presented during oral arguments. Plaintiffs suggest that this new formula card represents *additional evidence* that Georgia-Pacific used Calidria in its ready mix in 1972, that the product was coming out of Chicago, and that it may increase the likelihood that Mr. Rowland purchased a Georgia-Pacific product that contained Union Carbide Calidria asbestos. They argue this evidence presents a genuine issue of material fact. This Court disagrees. Although the Court admits that the explanations offered during oral arguments

regarding these formula cards were confusing at times, a review of the record makes clear that summary judgment is appropriate.

It became clear during oral arguments that there are approximately 1500 such formula cards from Georgia-Pacific. The formula card produced by Defendant for Ready Mix Filler C-978 (Filler "X") is dated January 17, 1972. The formula card produced by Plaintiffs is for the same Ready Mix Filler C-978 (Filler "X") dated April 14, 1972, and states that it supersedes formula number C-978 dated January 17, 1972. Therefore, this additional formula card merely supersedes Defendant's formula card for the same filler, and identifies that Calidria asbestos was used as an ingredient in the filler manufactured by Georgia-Pacific. This fact is not in dispute.

The existence of another formula card that reiterates that Calidria was being used in 1972 in the Georgia-Pacific product does not change what has already been conceded by Union Carbide—that Calidria was used in the Georgia Pacific ready mix in 1972. The issue is whether Plaintiffs can demonstrate that the two buckets of ready mix that Mr. Rowland purchased in 1972 or 1973 contained the Union Carbide Calidria asbestos. This additional formula card—one of thousands—does not serve as evidence to establish this critical point.

Where other suppliers were selling to Georgia-Pacific, the issue is not how many formula cards are available to demonstrate that Calidria was used in the ready mix but whether there exists a genuine issue of material fact that the ready mix that

8

Mr. Rowland purchased contained Calidria. The fact that there is an additional card does not make it a material fact under Rule 56 for there is no factual dispute that the trier of fact would be asked to consider.

The Court finds Plaintiffs cannot satisfy their "affirmative duty" by offering evidence that creates a reasonable basis for establishing that the products Mr. Rowland worked with actually contained asbestos from Union Carbide. Fatal to Plaintiffs' claims is that Georgia-Pacific was not supplied by Union Carbide only. Another supplier during the relevant time period included Philip Carey, which Defendant identified as Georgia-Pacific's chief supplier. Union Carbide was one of several suppliers of asbestos to Georgia-Pacific, and it cannot reasonably be inferred that the asbestos to which Ms. Rowland was allegedly exposed was supplied by Union Carbide.[17] A reasonable jury could not determine, beyond pure speculation, that the ready mix product used by Mr. Rowland contained Union Carbide Calidria asbestos and that Union Carbide was responsible for Ms. Rowland's injuries.[18]

## CONCLUSION

In viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact regarding Ms. Rowland's exposure to

---

[17] *See In re Asbestos Litig. (Sturgill)*, 2017 WL 6343519, at *3 (Del. Super. Dec. 11, 2017) (citing *Nutt*, 517 A.2d at 690) (holding Union Carbide was entitled to judgment as a matter of law because the plaintiffs were unable to establish that Mr. Sturgill was exposed to Union Carbide's asbestos) (citation omitted).

[18] *See In re Asbestos Litig. (Aveni)*, 2017 WL 5594055, at *2 (Del. Super. Nov. 8, 2017) (granting Union Carbide's motion for summary judgment for lack of product identification).

asbestos from Union Carbide's Calidria asbestos. The Court does not address the duty to warn or defective design arguments under Ohio substantive law because the Court finds that Plaintiffs' case fails under product identification. For the reasons stated, Defendant Union Carbide Corporation's Motion for Summary Judgment is **GRANTED**.

Judge Vivian L. Medinilla