**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE: (302) 255-0626

Submitted:  August 21, 2024
Decided:  November 21, 2024

George X
301 Bayard Street
P.O. Box 46
Delaware City, DE 19706

Matthew E. O'Byrne, Esquire
Daniella C. Spitelli-Sarnecky, Esquire
Casarino Christman Shalk
Ransom & Doss, P.A.
1000 North West Street, Suite 1450
Wilmington, DE 19899

**RE:**  *George X v. Progressive Direct Insurance Company*
<u>C.A. No.: N23A-05-008 VLM</u>

Dear Messrs. X and O'Byrne,

This matter is Appellant, Mr. X's, *de novo* appeal against Respondent Progressive Direct Insurance Company.  Trial is scheduled for February 10, 2025 against Respondent Progressive Direct Insurance.  Before the Court are cross Motions for Summary Judgment from the parties.  For the reasons stated below, Mr. X's Motion is **DENIED**, and Progressive's Motion is **GRANTED**.

1

# I. RELEVANT FACTS AND PROCEDURAL HISTORY[1]

## A. THE INSURANCE POLICY

On March 22, 2022, George X ("Mr. X") renewed his comprehensive automobile insurance policy with Progressive Direct Insurance Company ("Progressive"), paying a six-month premium for comprehensive and collision coverage, which included rental reimbursement coverage ("the Policy").[2]

The Policy provides: "If you pay the premium for this coverage, we will pay for sudden, direct and accidental loss to a: (1) covered auto...; and its custom parts or equipment, that is not caused by collision."[3] Under the comprehensive coverage, covered losses include "malicious mischief or vandalism" and "theft or larceny."[4] If determined to be a covered loss, the Policy also provides rental coverage.[5]

The Policy, however, contains exclusions. It states: "Coverage under this Part IV will not apply for loss… to any vehicle that is due and confined to. . . wear and

---

[1] Unless otherwise noted, this Court's recitation is drawn from the Notice of Appeal ("Appeal") and all documents the parties incorporated by reference. D.I. 1.

[2] Progressive Direct Insurance Company's Motion for Summary Judgment, D.I. 83 (hereinafter "Progressive's Mot."), Ex. B at 19 (hereafter "Auto Policy").

[3] *Id.*

[4] *Id.*

[5] *Id.* at 20. The rental coverage provides "We will reimburse rental charges incurred when you rent an auto from a rental agency or auto repair shop due to a loss to a covered auto for which Rental Reimbursement Coverage has been purchased. This coverage applies only if you have purchased both Comprehensive Coverage and Collision Coverage for that covered auto and the loss is covered under one of those coverages."

tear. . . , [or] mechanical, electrical or electronic breakdown or failure. . . ."[6] But the exclusion "does not apply if the damages results from the theft of a vehicle."[7]

### B. THE CLAIM AND INVESTIGATION

On June 12, 2022, around 1:00 a.m., Mr. X discovered damage to his 2015 Hyundai Accent that was parked in front of his home in Delaware City.[8] Mr. X called 911, and Delaware City Police Tyler Gaul responded, documenting in an Initial Crime Report that Mr. X was "the victim of vandalism."[9] Mr. X filed a claim with Progressive that same day, reporting that the vehicle had been keyed, had a white substance around the gas tank area, and would not start.[10] Mr. X also discovered the vehicle had been moved from its original parking location.[11]

Progressive arranged for the vehicle to be towed to Bud's Automotive (later renamed "Steadfast Automotive").[12] On June 14, 2022, Progressive provided Mr. X with a rental vehicle under the Policy's rental reimbursement provision.[13] On June 16, 2022, Steadfast Automotive conducted an inspection that revealed various

---

[6] *Id.* at 22.

[7] *Id.*

[8] Mr. X's Motion for Summary Judgment ¶ 21, D.I. 66 (hereinafter "Mr. X's Mot.").

[9] *Id.* ¶ 21-22.

[10] Progressive's Mot. at 4.

[11] *Id.*, Ex. E.

[12] Progressive's Mot., Ex. D.

[13] *Id.*

mechanical issues, including problems with the engine and electrical systems.[14]  On June 20, 2022, further inspection revealed the vehicle had been keyed and a blown head gasket causing coolant to mix with engine oil, along with various engine codes and a hydro-locked engine.[15]

On June 28, 2022, Progressive issued a Reservation of Rights Letter and discontinued rental coverage pending investigation of whether the damages were covered under the Policy.[16]  Following the Letter, Progressive made repeated attempts to obtain additional information and documentation from Mr. X.  Between July 2022 and May 2023, Progressive sent at least sixteen letters requesting Mr. X's cooperation with the investigation, including requests for service records and authorization for additional testing.[17]

In September 2022, Armstrong Forensic Laboratory tested fluid samples from the vehicle and concluded the engine issues were consistent with wear and tear rather than vandalism.[18]  On January 6, 2023, Progressive issued payment for the undisputed exterior damage to the vehicle.[19]

---

[14] Progressive's Mot., Ex. H.

[15] Progressive's Mot., Ex. D.

[16] Progressive's Mot., Ex. I.

[17] *See* Progressive's Mot., Exs. J, M, N, P, R-U, W-Z, AA.

[18] Progressive's Mot., Ex. Q.

[19] Progressive's Mot. at 12.

## C. PROCEDURAL HISTORY

On February 27, 2023, Mr. X filed for arbitration with the Delaware Department of Insurance.[20]  A hearing was held On May 10, 2023, before the Department of Insurance Automobile Arbitration Panel which found in Progressive's favor, holding Mr. X needed to "submit appropriate testing from his mechanic showing the engine damage is related to the vandalism."[21]

Following the Panel's decision, Mr. X initiated this action by filing a "Notice of Appeal" on May 23, 2023.[22]  He subsequently filed a two-page Amended Notice of Appeal on June 7, 2023, alleging violations of the Motor Vehicle Owners' Right to Repair Act, breach of contract, and loss of potential earnings.[23]

Through an unopposed Motion to Amend, Mr. X sought to have the Court accept the initial pleading as a Complaint and amend his claims to nine pages.[24]  This Amended Complaint substantially broadened the scope of allegations to include: (1) bad faith breach of duty to indemnify; (2) bad faith undermining of the police report; (3) bad faith tactics regarding rental coverage; and (4) bad faith delay in investigation

---

[20] *Id.*

[21] *See* Appeal.

[22] *Id.*

[23] D.I. 17.

[24] The Amended Complaint is included in the exhibits.  *See* D.I. 24, Exhibits.

and repair.[25] Adding to his claims, and without opposition, Mr. X supplemented his Amended Complaint with a Letter of Demand, this time requesting $600,000 in lost earnings.[26]

Respondent filed its Answer, and the Court issued its Trial Scheduling Order in September 2023.[27] The parties issued written discovery and Mr. X was deposed.[28]

On February 13, 2024, Progressive filed a Motion to Compel an Expert Report to opine on causation related to engine failure.[29] Because Mr. X argued his theory of liability was no longer based on the engine's failure but rather on supposed contractual failures on the part of Progressive, this Court denied the Motion to Compel.[30]

Mr. X continued to complicate the procedural path by filing multiple amendments and supplements to his Amended Complaint,[31] even after the discovery

---

[25] *Id.*

[26] D.I. 26. In the Letter of Demand, Mr. X requested Progressive to reimburse "for the loss of potential income totaling six hundred thousand dollars ($600,000.00 US[D]) or fifty thousand dollars (50,000.00 US[D]) per month beginning in June 2022. . . ." *See* D.I. 29.

[27] D.I. 32; D.I. 38.

[28] Progressive's Response in Opposition to Mr. X's Motion for Relief to Amend the Complaint and Motion for Leave to Amend Complaint to Conform to the Evidence and Progressive's Motion to Strike Mr. X's Amended Complaints and Affidavit of Demand at ¶ 7, D.I. 81 (hereafter "Progressive's Opp'n to Mot. to Amend").

[29] D.I. 57.

[30] D.I. 64.

[31] *See* D.I. 65, 77, 78.

deadline, which the Court ultimately struck following oral argument on May 14, 2024.[32]  Subsequently, both parties filed their respective Motions for Summary Judgment.[33]  Oral arguments were presented to the Court on August 21, 2024.  The Motions are ripe for decision.

## II.    PARTY CONTENTIONS

### A. MR. X'S CONTENTIONS

Mr. X's initial action alleged a violation of the Motor Vehicle Owners' Right to Repair Act; (2) breach of contract; and (3) loss of earnings.[34]  Through multiple amendments, he says summary judgment should be entered in his favor because Progressive breached both the express terms of the insurance contract and the implied covenant of good faith and fair dealing.[35]  First, Mr. X argues that because the vandalism occurred during the theft of the vehicle, the Policy's mechanical breakdown exclusion does not apply by the Policy's own terms.[36]

Second, Mr. X maintains that Progressive breached the contract and acted in bad faith by discontinuing rental coverage without conducting any meaningful

---

[32] D.I. 82.

[33] Mr. X's Mot.; Progressive's Mot.

[34] *See* Appeal.

[35] Mr. X's Mot. at 26-32.

[36] *Id.*

investigation.[37]   Mr. X argues that the Steadfast Automotive Inspection Report on June 16, 2022, on which Progressive relied, contained only "static data" that required further professional analysis to determine its probative value.[38]   According to Mr. X, Progressive's reliance on uninterpreted "static data" to deny benefits was unreasonable and demonstrates bad faith.[39]

Third, Mr. X asserts that Progressive violated Delaware insurance regulations, specifically 18 Del. Admin. Code § 902-1.2.1.3, by failing to promptly investigate the claim within ten working days.[40]   Mr. X emphasizes that Progressive waited until September 2022 to conduct fluid testing through Armstrong Laboratory, more than three months after the claim was filed.[41]

Finally, Mr. X argues that he can establish his claims without an expert because inferences can be drawn from the ordinary facts in this case.[42]   Mr. X maintains that Progressive's insistence on expert testimony is a pretextual attempt to avoid coverage obligations.[43]

---

[37] Mr. X's Supplemental Brief in Opposition to Progressive's Motion for Summary Judgment at 29, D.I. 88 (hereinafter "Mr. X's Supp. Br.").

[38] *Id*. at 30.

[39] *Id.*

[40] *Id.* at 31.

[41] Mr. X's Mot. at 29.

[42] *Id.* at 30-31.

[43] *Id.*

## B. PROGRESSIVE'S CONTENTIONS

Progressive contends it is entitled to summary judgment on several grounds. First, it argues Mr. X cannot maintain his claims without expert testimony to establish that the engine damage resulted from vandalism rather than wear and tear.[44] Progressive emphasizes that Mr. X has acknowledged he "does not expect to admit evidence supporting causation for the engine failure."[45]

Second, Progressive maintains there was no breach of contract because the investigation revealed the engine failure resulted from wear and tear, which is expressly excluded under the Policy.[46] Progressive argues its claims handling was reasonable and conducted in good faith, pointing to its sixteen letters requesting information from Mr. X and Mr. X's own acknowledgment to the Department of Insurance that these requests were appropriate.[47]

Third, Progressive contends that the Armstrong Laboratory testing, which indicated the engine damage was consistent with wear and tear, provides the only scientific evidence of causation.[48] Progressive maintains that it promptly paid for the undisputed exterior vandalism damage while reasonably investigating the more

---

[44] Progressive's Mot. at 18.

[45] *Id.* at 16.

[46] *Id.* at 17.

[47] *Id.* at 18.

[48] *Id.*

complex engine failure claims, and therefore, Mr. X's bad faith claims fail as a matter of law.[49]

## III.        STANDARD OF REVIEW

The burden of proof on a motion for summary judgment under Superior Court Civil Rule 56 falls on the moving party to demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[50]  If the moving party satisfies its initial burden, the non-moving party must sufficiently establish the "existence of one or more genuine issues of material fact."[51]  Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[52]  "All facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[53]

---

[49] *Id.* at 22.

[50] Super. Ct. Civ. R. 56(c).

[51] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488, 1995 WL 379125, at *3–4 (Del. 1995); *see also Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

[52] *Ebersole v. Lowengrub*, 180 A.2d 467, 469–70 (Del. 1962). *See also CNH Indus. Am. LLC v. Am. Cas. Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. June 8, 2015).

[53] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Plamer*, 343 A.2d 620, 621 (Del. 1975); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. 1978)).

## IV. DISCUSSION

At its core, this is a contract dispute. The elements of a breach-of-contract claim are "(1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) damages resulting from the breach."[54]

Progressive maintains adherence to its Policy where the engine damage falls within policy exclusions and the record is void of a genuine issue of material fact to suggest otherwise. Mr. X argues breaches of Progressive's obligations and bad faith investigation entitle him to damages well beyond engine failure, including loss of earnings.

Mr. X is self-represented. Since a court should not exalt the "formal defects" in *pro se* filings over their "underlying substance,"[55] the Court has looked past multiple—sometimes improper—filings to ensure his case is "fully and fairly heard."[56] This has led this Court and Progressive to follow Mr. X down various procedurally improper and factually distorted rabbit holes. As recently as August 9,

---

[54] *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *3 (Del. Super. Feb. 22, 2021) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

[55] *Sloan v. Segal*, 2008 WL 81513, at *7 (Del. Ch. Jan. 3, 2008); *see New Castle Cty. v. Kostyshyn*, 2014 WL 1347745, at *5 (Del. Super. Apr. 4, 2014) ("Given the liberal standard for construing *pro se* pleadings," the Court may entertain claims fairly raised but not explicitly named in a *pro se* complaint. (citations omitted)).

[56] *Durham v. Grapetree, LLC*, 2014 WL 1980335, at *5 (Del. Ch. May 16, 2014) (internal quotation marks omitted).

2024, Mr. X filed another Motion to Amend,[57] and a 273-page "amended brief" in opposition to Progressive's Motion for Summary Judgment,[58] which failed to respond to the arguments for summary judgment, instead inserting new arguments and claims.

While Mr. X's pleadings are to be "liberally construed" and "held to less stringent standards" because of his status as a *pro se* litigant,[59] "there is no different set of rules[.]"[60] A litigant's insufficiency of legal knowledge is not a valid defense or grounds for leniency in meeting the requirements of a claim.[61] Returning to Rule 56's clear path, the question is, therefore, whether a genuine issue of material of fact exists for the fact finder. With the journey now ended, no such disputable issue exists.

### A. MR. X FAILS TO ESTABLISH BREACH OF CONTRACT

For Mr. X to present his case to a jury, he must establish that Progressive breached its contractual obligation and damages resulted from that breach. Thus, he

---

[57] D.I. 89.

[58] *See* Mr. X's Supp. Br

[59] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Erickson v. Pardis*. 551 U.S. 89, 94 (2007).

[60] *Draper v. Med. Ctr. of Del.*, 767 A.2d 796, 799 (Del. 2001).

[61] *Damiani v. Gill*, 116 A.3d 1243, 1243 (Del. 2015) (citing *Draper v. Med. Ctr.,* 767 A.2d 796, 799 (Del. 2001)); *see also Price v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 1213292, at *7 (Del. Super. Mar. 15, 2013) (citing *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).

must establish a causal nexus of the alleged vandalism and theft to the engine damage—a covered loss under the Policy.

At the outset, one issue is whether Mr. X can prove causation absent expert testimony. The complex mechanical issues here—including a blown head gasket, coolant mixing with engine oil, and multiple diagnostic codes—do require technical expertise to determine causation. Mr. X suggests causation can be inferred merely from the timing of the theft and vandalism to conclude those acts caused engine damage. This is insufficient.

Notably, at oral argument on March 19, 2024, on Progressive's Motion to Compel an Expert Report, Mr. X acknowledged he "does not expect to admit evidence supporting causation for the engine failure" but maintains his breach of contract claims.[62] This gap is fatal to his claim.

While the Policy covers vandalism and theft, it expressly excludes losses "due and confined to . . . wear and tear."[63] Though Mr. X correctly notes this exclusion does not apply "if the damage results from the theft of a vehicle,"[64] he still must show that vandalism or theft caused the damage.[65] He fails to do so. Without expert

---

[62] D.I. 64.

[63] *See* Auto Policy.

[64] *Id.*

[65] Auto Policy ("A persons seeking coverage must…cooperate with us in any matter concerning a claim or lawsuit [and] provide any written proof of loss we may reasonably require.").

testimony opining vandalism or theft caused engine failure (rather than normal wear and tear), Mr. X cannot establish that his claim falls under the Policy as a covered loss.

In fact, the only scientific evidence in the record—the Armstrong Laboratory Analysis—indicates elevated wear consistent with mechanical failure rather than vandalism. The police report, while documenting *exterior* vandalism, cannot establish the internal technical cause of engine failure. Similarly, evidence that the vehicle was moved does not, without more, prove the engine damage resulted from theft rather than mechanical breakdown. Where Mr. X cannot establish causation or damages, his breach-of-contract claims fail.

## B. THE "BAD FAITH" CLAIMS FAIL AS A MATTER OF LAW

Giving Mr. X the benefit of his filings, this Court further considers his four separate claims of "bad faith" that Progressive breached the implied covenant of good faith and fair dealing.[66] Here, he claims Progressive conducted its investigation in bad faith, violating both contractual and statutory obligations.[67] These claims fail.

Under Delaware law, an insurer acts in bad faith only when it lacks reasonable justification for its coverage position.[68] Title 18 Del. Admin. Code §902-1.2.1.3

---

[66] *See* D.I. 24, Exhibits.

[67] *See* Mr. X's Mot. at 30-34.

[68] *Geico Gen. Ins. Co. v. Green*, 308 A.3d 132, 144 (Del. 2022).

requires insurers to "implement prompt investigation" within ten working days.[69] Progressive did just that. Within days of the claim, it arranged towing, provided rental coverage, and initiated inspections.[70]

Conversely, Mr. X failed to respond to requests for information. The record shows sixteen documented attempts by Progressive to obtain additional information from him between July 2022 and May 2023.[71] Notably, Mr. X himself acknowledged in a letter to the Department of Insurance that these investigative requests were appropriate and "part of the process to learn the extent of the vandalism."[72]

Nevertheless, Mr. X takes issue with Progressive's investigative efforts. He cries bad faith because Progressive relied on "static data" from the Steadfast Automotive Inspection Report, which he suggests was not sufficiently probative and required further analysis.[73] Counter to his claims, this report's "static data" supports the reasonableness of Progressive's investigation. If initial diagnostic data required professional interpretation, then Progressive was justified in seeking additional testing and documentation. It is not reasonable to require insurers to make coverage determinations based on inconclusive technical data.

---

[69] Title 18 *Del. Admin. Code* §902-1.2.1.3.

[70] *See* Progressive's Mot., Ex. H.

[71] Progressive's Mot., Exs. J, M, N, P, R, S, T, U, W, X, Y, Z, AA.

[72] Progressive's Mot., Ex. O.

[73] Mr. X's Supp. Br. at 30-31.

Lastly, while it is true that the implied covenant of good faith does "inhere[]" in all contracts. . . ,"[74] it cannot be used "to vary a contract's express terms. . . ."[75] And, to be clear, the covenant exists to deter arbitrary or unreasonable conduct that would spoil the fruits of a bargain.[76] Here, Mr. X fails to establish that Progressive's conduct was arbitrary or unreasonable, or that there was a gap in the Policy that would be filled with the implied covenant.[77] That he did not agree with the handling of the investigation is insufficient to invoke the covenant.[78]

## C. PROGRESSIVE'S DECISION TO SUSPEND RENTAL COVERAGE WAS REASONABLE

Finally, Mr. X's challenge to the rental coverage termination fails. Under the Policy, the language is clear that rental coverage applies only when the underlying

---

[74] *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017).

[75] *Buck*, 2021 WL 673459, at *5.

[76] *Dieckman*, 155 A.3d at 367.

[77] *See Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) ("Delaware's implied duty of good faith and fair dealing is not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to the contract. Rather, the implied covenant is an extraordinary legal remedy." (internal quotation marks and citations omitted)); *see also Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 183 (Del. Ch.) ("If a contractual gap exists, then the court must determine whether the implied covenant should be used to supply a term to fill the gap. Not all gaps should be filled.").

[78] *See Kuroda v. SPJS Holdings, Inc.*, 971 A.2d 872, 888 (Del. Ch. 2009) ("The implied covenant cannot be invoked to override the express terms of the contract. . . . *General allegations of bad faith conduct are not sufficient.* Rather, the plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract. Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully." (emphasis added) (citations omitted)).

loss is covered by comprehensive or collision coverage.[79] No genuine issue of material fact exists to dispute the reasonableness of Progressive's decision to suspend rental coverage pending investigation of whether the vehicle's damage was a covered loss. Moreover, Progressive clearly communicated to Mr. X its basis for suspending rental coverage through the Reservation of Rights Letter.[80] Its conduct was reasonable when it promptly paid for the undisputed exterior damage while maintaining openness to reinstating rental coverage upon proof that the engine damage resulted from a covered cause.

## V. CONCLUSION

For the foregoing reasons, Progressive's Motion for Summary Judgment is **GRANTED**, and Mr. X's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

---

[79] Auto Policy.

[80] *See* Progressive's Mot., Ex. E.